HALL, Arthur Lee, on behalf of himself and all others similarly situated, Appellant,

v.

PENNSYLVANIA STATE POLICE and Colonel James D. Barger, Commissioner and Individually and Commonwealth of Pennsylvania and Milton Shapp, Governor of Pennsylvania and Individually and Robert P. Kane, Attorney General of Pennsylvania and Individually and the Bank of King of Prussia, King of Prussia, Pennsylvania.

No. 77–1288.

United States Court of Appeals, Third Circuit.

Argued Dec. 6, 1977.

Decided Jan. 20, 1978.

Edward L. McCandless, Jr., Howard M. Girsh, Steinberg and Girsh, Philadelphia, Pa., for appellant.

Lowen K. Hankin, Hankin, Hankin & Hankin, Willow Grove, Pa., for appellee Bank of King of Prussia.

Axel A. Shield, II, Asst. Atty. Gen., Michael von Moschzisker, Deputy Atty. Gen., Robert P. Kane, Atty. Gen., Philadelphia, Pa., for Commonwealth appellees.

Before ALDISERT and WEIS, Circuit Judges, and CHRISTENSEN, District Judge.*

## OPINION OF THE COURT

WEIS, Circuit Judge.

A bank customer's complaint which alleges that he was photographed pursuant to a police-promoted plan which expressly discriminated on a racial basis sets out a claim under the Civil Rights Acts. Accordingly, a dismissal of plaintiff's complaint under Fed. R.Civ.P. 12(b)(6) must be vacated.

The plaintiff filed a complaint against the Pennsylvania State Police, its commissioner and other state officials, as well as the Bank of King of Prussia, alleging violations of the Civil Rights Acts, 42 U.S.C. §§ 1981, 1983, 1985, 1986, and the Fifth, Thirteenth and Fourteenth Amendments to the United States Constitution. He charged that at the instance of the state officials, a directive had been issued to the defendant bank and other financial institutions to photograph suspicious black males or females coming on the premises. Contending that his right to privacy and other civil rights had been violated, plaintiff, a black citizen, asked for declaratory and injunctive relief as well as damages.

After the defendants had filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff asked leave to file a second amended complaint which deleted two governmental entities, and set out the facts in greater specificity. The district court concluded that the proposed amended, as well as the original and first amended complaints, failed to state a federal cause of action and dismissed the action without prejudice.

Attached to the original complaint was a copy of the directive issued by the state police. It stated in part:

### "BANK INFORMATION

1/ Take photos of any black males or females coming into bank who may look suspicious:

A. Come in to ask directions

B. Exchange large bill for small money

C. Come in for no apparent reason.

### NOTIFY LOCAL OR STATE POLICE"

The proposed amended complaint stated that the directive was received in August, 1974 by the defendant bank which in concert with the state officials commenced a program of photographing suspicious-looking blacks who entered the bank. The photographs were delivered or made available to the police. On March 17, 1976, the plaintiff entered the bank to transact business and was photographed. He believed that his photograph had been made available to the state police and had been preserved for unlawful purposes. After the district court dismissed the case, the plaintiff did not attempt to again amend but took this appeal.

We first meet the issue of appealability. In *Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976), we held that an order of dismissal without prejudice is appealable only if the plaintiff cannot amend his complaint or declares his intent to stand on it. The requirement of finality is given a practical, rather than a technical construction. Since the plaintiff tendered an amended complaint, the district court properly considered that pleading to determine the legal sufficiency of the claims asserted. It would

---

* Honorable A. Sherman Christensen, of the United States District Court for the District of Utah, sitting by designation.

involve needless delay if a ruling on the proposed complaint were postponed until after it had been formally filed following an adverse ruling on the motion directed to the original complaint. The district court's action was a practical approach to the problem.

■ The plaintiff cannot alter the proposed amended complaint in any relevant respect beyond that already drafted and has decided to stand on it. Moreover, the facts underlying the case are simple and the legal issue is clearly framed. Under these circumstances, in contrast with *Borelli*, there does not appear to be any real opportunity to amend beyond that proposed in the amendment. For all practical purposes, the dismissal in the district court is final. We therefore conclude that the order construing the amended complaint as if it had been filed is appealable.

■ The district court ruled that the amended complaint was not sufficiently specific to comply with the decisional law of this court, including *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976). *See also Negrich v. Hohn*, 379 F.2d 213 (3d Cir. 1967). Here, the plaintiff has alleged the conduct violating his rights (racially discriminatory activity), time (March 17, 1976), place (King of Prussia) and those responsible (various state and bank officials). By way of contrast, in *Rotolo*, the complaint charged only a "denial of the Plaintiff's First Amendment rights," 532 F.2d at 921, and was without facts upon which to assess the substantiality of the claim. In *Negrich*, the allegations were infirm because they were "broad and conclusory" rather than factual. 379 F.2d at 215. The proposed amended complaint does not suffer those infirmities. It is sufficiently precise to give

notice of the claims asserted and withstand the defendants' challenge to its filing.

Although the district judge decided that the motion should be denied because of lack of specificity, he went further and, having searched the complaint for allegations of an actionable civil rights violation, determined that none had been stated.[1] In so concluding, the district court observed that 42 U.S.C. § 1981 is primarily concerned with contractual rights and that the bank had the right to photograph suspicious persons of any race. Acknowledging the motivation behind the directive could have been entirely reprehensible and highly offensive, the court nonetheless did not believe that a violation of § 1981 had been set out because plaintiff did not allege deprivation of any contractually related right because of race.

Assuming the existence of state action, the court found no assertions of conduct proscribed by 42 U.S.C. § 1983. On the premises that no liberty deprivations had been alleged by plaintiff and that *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), held defamation or loss of reputation was not a constitutionally based right, the district judge further found that the facts stated no § 1983[2] cause of action for invasion of privacy. It followed that no claim was stated under §§ 1985(3) or 1986.

■ In their briefs the parties have discussed a constitutional right of privacy which was said to have been violated here. But we think that consideration is not essential at this stage of the litigation. What has been clearly set forth in the pleadings is a governmental directive which calls for a specified activity directed against a group of citizens identified on the basis of race. Such allegations facially involve federally protected rights.

1. In ruling on the defendant's 12(b)(6) motion, the district judge properly applied the rule that the facts in the complaint must be accepted as true. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). While the pleading is not artfully drawn, the principal contentions are adequately set forth.

2. 42 U.S.C. § 1983 reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

A governmental measure explicitly affecting a single racial group is constitutionally "suspect," *Korematsu v. United States*, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944). Because the core of the Fourteenth Amendment is the prevention of unjustified official distinctions based on race, *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 81, 21 L.Ed. 394 (1873); *Strauder v. West Virginia*, 100 U.S. 303, 307–08, 25 L.Ed. 664 (1880); *Ex Parte Virginia*, 100 U.S. 339, 344–45, 25 L.Ed. 676 (1880); *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), racial classifications bear a far "heavier burden of justification" than others. *In re Griffiths*, 413 U.S. 717, 721, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); *Hunter v. Erickson*, 393 U.S. 385, 392, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969); *Loving v. Virginia*, 388 U.S. 1, 9, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1966); *McLaughlin v. Florida*, 379 U.S. 184, 194, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). In order to justify the use of a suspect classification, a state must show that its use of the scheme is "necessary . . . to the accomplishment of its purpose or the safeguarding of its interest." 413 U.S. at 722, 93 S.Ct. at 2855.

The Equal Protection Clause demands that racial classifications, especially suspect in criminal statutes where the power of the state weighs most heavily, be subjected to the "most rigid scrutiny." *Korematsu v. United States, supra*, 323 U.S. at 216, 65 S.Ct. 193. Such a classification "can never be made arbitrarily and without any such basis. . . . [A]rbitrary selection can never be justified by calling it classification." *McLaughlin v. Florida, supra*, 379 U.S. at 190, 85 S.Ct. at 287, *quoting Gulf, C. & S. F. Ry. v. Ellis*, 165 U.S. 150, 155, 17 S.Ct. 255, 41 L.Ed. 666 (1897). *See Baker v. City of Petersburg*, 400 F.2d 294, 301 n.10 (5th Cir. 1963).

The Fourteenth Amendment's primary concern[3] for the elimination of differences in treatment by the state based upon racial criteria has led to the rejection of racial classifications not only when used for singling out participants in the exercise of fundamental rights, *see, e. g., Anderson v. Martin*, 375 U.S. 399, 84 S.Ct. 454, 11 L.Ed.2d 430 (1964) (racial designation on nomination papers and ballots); *Hamm v. Virginia State Board of Elections*, 230 F.Supp. 156 (E.D.Va.), *aff'd sub nom., Tancil v. Woolls*, 379 U.S. 19, 85 S.Ct. 157, 13 L.Ed.2d 91 (1964) (designation of race in voting and property records), but also in activity not in itself substantively guaranteed by the Constitution, *see, e. g., McLaurin v. Oklahoma State Regents*, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149 (1950) (designated seating in graduate school classrooms).[4]

In the case *sub judice* the challenged activity is not state-enforced segregation, and not so much a deprivation of some right which the plaintiff enjoys other than Equal Protection, but rather positive action by the state against him because of his race. Immunity from such discrimination, however, is one of the rights of all persons guaranteed by the Equal Protection Clause. As the Supreme Court in *Strauder*

---

3. *See generally* Bickel, The Original Understanding and the Segregation Decision, 69 Harv.L.Rev. 1 (1955); Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1087–1104 (1969).

4. In *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the Supreme Court discussed the public function of education, and the importance of educational opportunities, as well as the sociological and psychological findings of inequality in segregated education. The case's reach, however, has not been limited to public education. Since that decision came down, the Court has consistently and summarily held invalid state-imposed racial segregation in other public facilities, citing *Brown* as authority. *See, e. g., Johnson v. Virginia*, 373 U.S. 61, 83 S.Ct. 1053, 10 L.Ed.2d 195 (1963) (segregated courtrooms); *Gayle v. Browder*, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114, *aff'g mem.*, 142 F.Supp. 707 (M.D.Ala. 1956) (motor buses); *Mayor & City Council v. Dawson*, 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774, *aff'g mem.*, 220 F.2d 386 (4th Cir. 1955) (bathhouses); *Muir v. Louisville Park Theatrical Ass'n*, 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112 (1954), *vacating mem.*, 202 F.2d 275 (6th Cir. 1953) (golf courses).

*v. West Virginia, supra,* stated, the Fourteenth Amendment confers a positive immunity, "the right to exemption from unfriendly legislation against them distinctively" on account of race. 100 U.S. at 308, 25 L.Ed. 664.

■ The photography program initiated by the state police is a form of criminal investigation directed against the plaintiff because of his race. Although it may be assumed that the state may arrange for photographing all suspicious persons entering the bank, *Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate,* 519 F.2d 1335 (3d Cir. 1975), it does not follow that its criterion for selection may be racially based, in the absence of a proven compelling state interest. This is not a situation where suspects are being sought on the basis of descriptions which include race as well as other physical characteristics. No crime was under investigation nor was there any information that a robbery was planned. The police simply instituted a general photographic survey limited to one race, a practice not justifiable on the factual allegations in plaintiff's complaint.

Here, as was said in *NAACP v. Alabama,* 357 U.S. 449, 463, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958), "[t]he crucial factor is the interplay of governmental and private action." The fact that the photographs were to be taken by bank employees and turned over to the police may amount to governmental stimulation of racial prejudice. In *Anderson v. Martin, supra,* the Court recognized that while compulsory designation of the race of a candidate on a ballot did not restrict anyone's candidacy, the state had illegally furnished "a vehicle by which racial prejudice may be so aroused as to operate against one group because of race and for another. . . . The vice lies not in the resulting injury but in the placing of the power of the State behind a racial classification that induces prejudice." 375 U.S. at 402, 84 S.Ct. at 456.

The case *sub judice* in some respects presents a stronger argument against dismissal at a preliminary stage than *Adickes v. Kress,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In that § 1983 litigation, the defendants presented affidavits in support of summary judgment, while here, the defendants are bound by the allegations of the complaint. In *Adickes,* the role of the government was by no means as direct as here, where the state police issued a written directive to be carried out by the bank. *See Lombard v. Louisiana,* 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1962). In both cases the private enterprises worked in concert with state officials and in both the racial discrimination is undeniable.

■ The allegations that the state, with the bank's cooperation, discriminated against the plaintiff on the basis of race in its directive sets out a prima facie case. The state and bank must meet the assertions and justify the classification—they cannot successfully prevail on a 12(b)(6) motion when governmental racially discriminatory action is at issue.

■ The dismissal order was entered before our opinion in *Mahone v. Waddle,* 564 F.2d 1018 (3d Cir. 1977), was filed, and consequently, the district court did not have the benefit of our exposition on the scope of § 1981.[5] We concluded there that § 1981 is not confined to contractual matters when a governmental entity is involved. Racially motivated misuse of governmental power falls within the ambit of its "equal benefit" and "like punishment" clauses which provide that "all persons . . . shall have the same right . . . to the full and equal benefit of all laws . . . for the security of persons and property . . . as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties . . . and exactions of every kind, and to no other."[6]

---

5. *See Mahone v. Waddle, supra* at 1026–29.

6. 42 U.S.C. § 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and prop-

Our reading of *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), also makes it apparent that the proposed amended complaint sets out a cognizable claim under § 1981 against the defendant bank. In *Runyon*, the Supreme Court held that § 1981 prohibits private, commercially operated, nonsectarian schools from denying admission to prospective students because they are black. Because of the racial exclusion practiced by the schools "a classic violation of § 1981" was found by the Court since the educational services they advertised to the general public were not offered on an equal basis to white and nonwhite prospective students. 427 U.S. at 172–73, 96 S.Ct. 2586.

■ Section 1981 obligates commercial enterprises to extend the same treatment to contractual customers "as is enjoyed by white citizens." Here, plaintiff asserts that upon entering the premises to transact business, his photograph was taken for the police by bank employees pursuant to a racially based surveillance scheme. He received disparate, and because it was based on race, disparaging treatment for which the record offers no justification.

This was not the isolated act of an individual employee, but rather the implementation of a policy deliberately adopted by the bank management to offer its services under different terms dependent on race. We hold that an allegation of that nature claiming violation of § 1981 should withstand a 12(b)(6) motion to dismiss.

Accordingly, the order of dismissal will be vacated and the case remanded to the district court for further proceedings consistent with this opinion.

erty as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties,

taxes, licenses, and exactions of every kind, and to no other."