621 F.2d 75
 Dawn L. BOYKINS, a minor by Louis Boykins, Jr., her father
and next friend, Appellant,
v.
AMBRIDGE AREA SCHOOL DISTRICT, Ambridge Area School District
Board of Education, Dr. Paul R. Vochko, Individually and as
Superintendent of Schools and Mary Frances Buk, Individually
and as sponsor and coach, Appellees.
 No. 79-2027.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 19, 1980.
Decided May 9, 1980.
 
 David B. Washington (argued), Pittsburgh, Pa., for appellant.
 Michael V. Gilberti (argued), Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellee Dr. Paul R. Vochko.
 Before GIBBONS and ROSENN, Circuit Judges, and SHAPIRO,* District Judge.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Dawn L. Boykins, a minor suing by Louis Boykins, Jr., her father and next friend, appeals from an order granting a final judgment in favor of the defendants on their motion for summary judgment. The defendants are a school district board of education, the district superintendent, and the coach of a drill team organized as a school activity. Boykins charged she was dismissed from the team because she was black. We reverse.
 
 I.
 
 2
 On May 4, 1976 the Boykins filed a verified Complaint alleging that Dawn, a black student attending the Ambridge Area School District high school, had on August 28, 1975 been dismissed as a member of the Bridger Belles, a drill team conducted as a school activity. The Complaint further alleged that although the ostensible reason for her dismissal was that, in violation of drill team regulations, she had missed practice for the sixth time, the actual reason for her dismissal was that she was black. It alleged, further, that she appealed to the School Board, which on September 9, 1975 ordered her reinstatement. Attached to the Complaint as Exhibit A is a copy of the School Board's September 10, 1975 decision, which notes an inconsistency in the method in which two cases of absence, involving one black student and one white student, were handled; a further inconsistency in the rules permitting excused absence for vacation but not for scheduled work; the fact that the school superintendent had ruled, following Dawn's fifth absence, that she would be in compliance if she attended all sessions of Band Camp practice, which she had done; and the fact that the sixth absence was not from a regularly scheduled practice session, but from one scheduled on only a few hours' notice and at a time when she was scheduled to work. The Complaint further alleges that on September 11, 1975, the Board, faced with a threatened resignation of Mrs. Mary Frances Buk, the coach/sponsor of the drill team, changed its position, withdrew its direction to reinstate Dawn, and ruled that the coach/sponsor had the prerogative of choosing her participants. It alleges, further:
 
 
 3
 The changing of the Board's position and the action of the coach/sponsor was done because plaintiff was black and even though all parties knew that white girls had been reinstated who actually missed six (6) days of practice.
 
 
 4
 The defendants' actions were alleged to be in violation of 42 U.S.C. § 1983 and § 1985. The only relief requested was damages.
 
 
 5
 In due course the defendants, the School District Board of Education, the Superintendent of Schools, and the coach/sponsor, Mrs. Buk, filed answers.
 
 II.
 
 6
 On June 30, 1977 Louis Boykins, Jr., was deposed. His deposition, on file, discloses that at one time the local chapter of the NAACP, concerned that the school did not select black cheerleaders or drum majorettes, suggested the formation of a drill team which would give girls of minority races greater opportunity to participate. At that time, according to his testimony, there were no black girls on the majorette squad or the cheerleading squad. When the drill team was formed Dawn tried out and qualified. Thereafter, according to Mr. Boykins, Mrs. Buk interrogated Dawn about the activities of the NAACP with respects to charges of discrimination in the selection of drum majorettes and cheerleaders. He described the interrogation as a grilling. Mrs. Buk, he testified, was also a coordinator of cheerleaders and majorettes. The drill team scheduled practices during the summer evenings when Dawn, like the other Boykins children, had a part time summer job. Boykins testified that Mrs. Buk caused other members of the drill team to check at Friendly Ice Cream to see if Dawn was actually working when she claimed to be. Eventually Dawn told her father that she had been threatened by Mrs. Buk with dismissal for missing practices, but disputed the number of times she actually had missed practice. Boykins met with Mrs. Buk, who was adamant in her position about attendance despite any conflict with Dawn's work schedule. Boykins then called the president of the school board, who in turn called the superintendent of schools, Dr. Vochko, who said "Well, tell Lou that any problem just as long as Dawn does not miss any practices for band camp, . . . (s)he should have no problem." Band Camp was a two week period of morning and afternoon sessions, all of which Dawn attended. On a Wednesday Mrs. Buk, at midday, came to Band Camp and told the drill team members that they would have to come to an additional practice session that evening, when, as Mrs. Buk knew, Dawn was scheduled to work. When his daughter asked him whether she should go to work Boykins, in reliance on what the superintendent had said about attending all Band Camp sessions, told her to do so. The next morning Dawn attended Band Camp, and at noon was told by Mrs. Buk that she was dismissed from the drill team. Boykins called Dr. Vochko, who, he says, instructed Mrs. Buk, and Mr. Tolfa, the band director, to put Dawn back on the team. However, when Dawn returned to practice she was excluded. Boykins also testified:
 
 
 7
 There was a young lady, Terry Kashuba, who had missed drill team practice during school. Mrs. Buk dismissed Terry Kashuba because of this. After Mrs. Buk dismissed Dawn, said she didn't want Dawn, she then brought Terry Kushuba back on the drill team, says, "You're back on."
 
 
 8
 Terry Kashuba is white.
 
 
 9
 Thereafter the school board meeting of September 10, 1975, referred to in the Complaint, took place, and Boykins was advised, first of the board's favorable decision and later of its change of position. By then school had reopened, and in the high school a regular activities period was scheduled, during which practice for activities such as band, football and drill team took place. For two or three weeks while the drill team practiced, Dawn was placed in an unattended classroom by herself. Boykins' deposition was filed on July 22, 1977.
 
 III.
 
 10
 On December 23, 1977 defendant Vochko filed a motion for summary judgment. The motion was not supported by any affidavits. It asserts two grounds for dismissing the Complaint. The first is that on December 3, 1975 plaintiffs presented a Complaint, identical in all particulars to the instant Complaint, to the Pennsylvania Human Relations Commission, at Docket No. P-1172; that hearings were held on that Complaint; that the Commission found there was insufficient basis for a finding of discrimination; that no appeal was taken from the Commission's judgment; and that the instant case is barred by collateral estoppel or res judicata. The second ground asserted is that the Complaint is insufficiently specific to meet the pleading standards of this court for civil rights actions. Vochko's moving papers did not contain any pleadings, transcript of proceedings, or orders of the Pennsylvania Human Relations Commission, but attached a letter dated September 23, 1977 from the Executive Director of the Commission to the attorneys for the school board, describing the decision of the Commission. The letter says that the Commission determined that the Boykins' charge was not substantiated. Nowhere in the moving papers, however, is there any disclosure of the inquiry which prompted the Executive Director's September 23, 1977 letter, or any disclosure of his authority to certify what the Commission decided.
 
 
 11
 In response to the Vochko motion for summary judgment the Boykins' attorney, on January 16, 1978, filed an answer. Like the motion, it is not supported by an affidavit. It does, however, deny unequivocally that the Human Relations Commission ever conducted a hearing on the merits, or made a ruling on the merits. Furthermore, attached as an exhibit to the answer is a letter from Cheryl L. Allen, Assistant General Counsel to the Commission, dated March 15, 1977, advising the Boykins' attorney:
 
 RE: Docket No. P-1172
 
 12
 Louise Boykins v. Ambridge Area School District
 
 Dear Mr. Washington:
 
 13
 This is to confirm our recent telephone conversation regarding further Commission action in the above case.
 
 
 14
 This case will be closed for the following reasons:
 
 
 15
 1. As the Complainant's daughter will graduate in June, 1977, a public hearing obtaining an order to reinstate her to the drill team would be inappropriate.
 
 
 16
 2. The Commission presently does not have the power to order compensatory damages in this case.
 
 
 17
 I hope that this adequately states our position on this matter.
 
 
 18
 For further information, please contact me.
 
 
 19
 The Assistant General Counsel's statement that the Human Relations Commission cannot order compensatory damages accurately reflects Pennsylvania law. Lee v. Walnut Garden Apartments, Inc., 479 Pa. 142, 144, 387 A.2d 875, 876 (1978) (per curiam); Midland Heights Homes, Inc. v. Commonwealth of Pa. Human Relations Comm'n, 478 Pa. 625, 626, 387 A.2d 664, 664 (1978) (per curiam); Pennsylvania Human Relations Comm'n v. Straw, 478 Pa. 463, 465, 387 A.2d 75, 76 (1978); Pennsylvania Human Relations Comm'n v. Zamantakis, 478 Pa. 454, 457-59, 387 A.2d 70, 72-73 (1978). The only relief requested in the instant action is damages.
 
 
 20
 Although the Boykins' answer to the motion for summary judgment was filed on January 16, 1978, that motion was not disposed of immediately. The case was pretried on April 24, 1979, and on May 1, 1979 all defendants filed a new motion for summary judgment identical in every respect to that filed in December 1977 by defendant Vochko. As before, there were no supporting affidavits. There was then on file not only the verified Complaint and the answer to the Vochko motion, but also the Boykins deposition.
 
 
 21
 On May 30, 1979, the district court granted the motion for summary judgment. The Court listed five reasons:
 
 
 22
 (1) Dawn's graduation rendered the case moot;
 
 
 23
 (2) the incident complained of was not racially motivated;
 
 
 24
 (3) the drill team activity was that of a private social organization managed by "fans;"
 
 
 25
 (4) the decision of the Pennsylvania Human Relations Commission adjudicated the charge of racial discrimination adversely to the plaintiffs; and
 
 
 26
 (5) the complaint lacked the specificity required for a civil rights act case.
 
 
 27
 This appeal followed.
 
 IV.
 
 28
 On appeal the defendants do not defend the first three reasons relied upon by the District Court. They acknowledge that Dawn's graduation did not moot her claim for money damages, that no affidavit put in issue the allegations of racial motivation, and that the drill team was an activity sponsored by the school district's high school. They do contend that an affirmance is proper for either of the remaining grounds. We do not agree.
 
 
 29
 We turn first to the claimed judgment preclusion effect of the decision of the Pennsylvania Human Relations Commission. On the papers before the court it is impossible to tell what, if anything, the Commission decided. All that the record contains on that issue is two conflicting letters, one from the Commission's Assistant General Counsel and another from its Executive Director. One letter says there was no hearing and the other, while not saying in as many words that there was a hearing, says that the Commission concluded that there were insufficient facts to support the charge of discrimination. If the motion for summary judgment, unsupported by an affidavit, and resting on a copy of a letter describing in conclusory terms the legal effect of the Commission proceeding, was sufficient, under Fed.R.Civ.P. 56, to require any response, certainly the answer containing the conflicting letter from the Commission's Assistant General Counsel presented a disputed issue of fact. Moreover even if the actual record of the Commission proceedings had been presented there would be difficulties with a summary disposition. As we noted above, the Supreme Court of Pennsylvania has established beyond doubt that the Commission lacks jurisdiction to award compensatory damages, the relief sought here. Certainly the claims were not the same. Thus res judicata can hardly apply. Moreover the Pennsylvania Supreme Court has narrowly circumscribed the discovery tools available in proceedings before the Commission. Pennsylvania Human Relations Comm'n v. St. Joe Minerals Corp., 476 Pa. 302, 310-12, 382 A.2d 731, 735 (1978). Considering those limitations on discovery, we have no idea what collateral estoppel effect a Pennsylvania court would give to a Commission order. The defendants at oral argument candidly acknowledged that there is no case law illuminating that question. Cf. City of Philadelphia v. Stradford Arms, Inc., 1 Pa.Cmwlth. 190, 274 A.2d 277, 280 (1971). Certainly we would not give greater judgment preclusive effect to a Commission proceeding than would Pennsylvania. See 28 U.S.C. § 1738. Whether we would give any judgment preclusion effect to a state administrative agency proceeding in a suit under 42 U.S.C. § 1983 is at least an open question. See Prentis v. Atlantic Coast Line, 211 U.S. 210, 226-27, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908) (distinguishing between legislative and adjudicative functions; legislative-type proceedings of state administrative agency not entitled to res judicata effect); cf. Moore v. City of East Cleveland, 431 U.S. 494, 524 n.2, 97 S.Ct. 1932, 1948, 52 L.Ed.2d 531 (1977) (Burger, C. J., dissenting) (because state administrative agency's determinations have no collateral estoppel effect, requiring exhaustion would not limit access to federal forum); Wooley v. Maynard, 430 U.S. 705, 710-11, 97 S.Ct. 1428, 1432-33, 51 L.Ed.2d 752 (1977) (suggesting state conviction no bar to federal litigation); Huffman v. Pursue, Ltd., 420 U.S. 592, 606 n.18, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975) ("we in no way intend to suggest that . . . the normal rules of res judicata and judicial estoppel do not operate to bar relitigation in actions under 42 U.S.C. § 1983 of federal issues arising in state court proceedings"). Compare In re Federal Water & Gas Corp., 188 F.2d 100, 104 (3d Cir.) (quasi-judicial determinations of administrative agency are entitled to res judicata effect), cert. denied sub nom. Chenery Corp. v. SEC, 341 U.S. 953, 71 S.Ct. 1018, 95 L.Ed. 1375 (1951) with Roudebush v. Hartke, 405 U.S. 15, 20-21, 92 S.Ct. 804, 808, 31 L.Ed.2d 1 (1972) (federal courts can review legislative acts of state courts and administrative agencies) and FTC v. Texaco, Inc., 555 F.2d 862, 894 (D.C.Cir.) (Leventhal, J., concurring) (individualized rate-making decisions of state administrative agencies have no res judicata effect), cert. denied, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977). See generally K. Davis, Administrative Law Text §§ 18.02, 18.03 (1972). Certainly the record on which the district court acted is not one compelling us to jump into so difficult an area. We should have before us something more establishing the affirmative defense relied upon than two conflicting letters.
 
 
 30
 As to the specificity required in a Civil Rights Act Complaint, the currently governing authority is Hall v. Pennsylvania State Police, 570 F.2d 86 (3d Cir. 1978). There we held plaintiff's Complaint met the pleading standard of Rotolo v. Borough of Charleroi, 532 F.2d 920, 922-23 (3d Cir. 1976) when it "alleged the conduct violating his rights (racially discriminatory activity), time (March 17, 1976), place (King of Prussia) and those responsible (various state and bank officials)." Hall v. Pennsylvania State Police, 570 F.2d at 89. The instant Complaint amply meets the Hall test. It alleges the conduct, expulsion from the drill team, the improper racial motive, the times and places of the activity complained of, and the persons responsible, Mrs. Buk, Dr. Vochko, and the members of the School Board. From the facts alleged we can weigh the substantiality of the claim. No more is required. See Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1171-73 (3d Cir. 1978). Moreover the Complaint was fleshed out in this case by an extensive deposition.
 
 V.
 
 31
 The order granting summary judgment will be reversed and the case remanded for further proceedings.
 
 
 
 *
 Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation