**Thomas G. SEIP, Plaintiff,**

v.

**NEWARK POLICE DEPARTMENT, City of Newark, Police Officer Robert Gellerman, Police Officer Robert Payne and John Doe A to Z jointly and/or severally, Defendants.**

Civ. A. No. 84–3898.

United States District Court, D. New Jersey.

Dec. 9, 1986.

---

Ronald F. Esposito, Elizabeth, N.J., for plaintiff.

Rosalind Lubetsky Bressler, Corp. Counsel, City of Newark, Newark, N.J. by John C. Pidgeon, First Asst. Corp. Counsel, for defendants.

## OPINION

STERN, District Judge.

This lawsuit, an action brought against the City of Newark and two individual police officers, alleged violations of the plaintiff's constitutional rights. This Court granted defendants' motion to dismiss at the close of plaintiff's case. Subsequently, the Court granted defendants' motion for attorney's fees and set the award at $700.

The matter is now before the Court on remand from the Third Circuit, which reversed this Court's award of attorney's fees, made specific findings of law, and remanded for "a new calculation of fees in conformity with this opinion." 804 F.2d 1249 (table).

The appellate decision did not disagree with the principle motivating the original fee award. Section 1983 of Title 42 is an effective mechanism for the compensation of an injured plaintiff. Nowhere is this more true than in § 1983 suits against errant police officers.

Section 1983 can be a powerful weapon against abuses of police power. Like all powerful weapons, however, § 1983 is dangerous in the wrong hands. Too frequently, plaintiffs simply point the barrel of § 1983 in the direction of some unoffending public agency.

Such frivolous actions waste the valuable time of the court of course. Worse, they tax the meager resources of the defendant, whose legal departments have far more important legal battles to fight. And worst of all, they bring the federal courts, and the Constitution itself, into disrepute. A conscientious police officer must feel a sense of outrage when he is hauled into court on a meritless assertion that he has violated someone's constitutional rights. Section 1983 can serve as an effective antidote for police harassment of individuals; it has no place as a device for the harassment of municipal employees.

In awarding the City of Newark fees against the plaintiff, this Court concluded that the suit against the City was frivolous and without merit. Hearing of Nov. 25, 1985 (hereinafter "Fees Tr.") at 2. The Third Circuit agreed with that finding, slip op. at 7. Moreover, while it is not necessary to make such a finding in order to award fees to the City, the Court was then and is now of the opinion that this suit was also frivolous and without merit in regard to the individual police officers.

The trial transcript gives the facts as they emerged from the plaintiff's own mouth.

The plaintiff, Thomas Seip, was employed by a private security firm called Masters Investigators International, which

supplied guards for city buildings in the City of Newark. Trial Tr. of July 23, 1985 (hereinafter "Trial Tr.") at 24. He was also a member of the Elizabeth Police Reserves. On November 3, 1982, he was working as a security guard in a supervisory position over other guards in Newark City Hall. Trial Tr. at 30. At about 2:00 P.M., Seip was told by a police officer that a prisoner had escaped. Trial Tr. at 30. After giving orders to seal off the building, Seip went into the basement in search of the prisoner. There, he testified, he was attacked from behind by an assailant who choked him and tried to grab his pistol. Trial Tr. at 32–33. Seip testified that he broke free and fired a shot at the assailant, who fled. Trial Tr. 33–34. It appears from the record that no one else saw Seip's assailant.

Numerous police officers arrived on the scene. Seip testified that they took his gun from him, and that they did not believe his story concerning the assailant. Trial Tr. at 34. At about 2:30 P.M., he was taken to police headquarters, which is adjacent to City Hall. There he was questioned by the defendant, Detective Robert Gellerman and the defendant, Detective Robert Payne, concerning the firing of his pistol. Trial Tr. at 34. According to Seip, they "didn't quite believe" his version of the incident. A third detective told Seip, "it's not too late to change your story . . . it would only be a misdemeanor for lying on a police report." Trial Tr. at 37.

At this point, Detective Gellerman asked to see Seip's identification. Seip produced his wallet and showed him, among other papers, his police reserve identification card. Gellerman looked at the card and said, according to Seip: "Now that we got little scabs like you working taking jobs away from cops, now you're going to pay." Trial Tr. at 39.[1]

Shortly thereafter, at about 5:30, Gellerman told Seip, "We're going to hold you. You're allowed to make one phone call." However, Seip had not yet been arrested, and his understanding was that he was free to leave. Trial Tr. at 40, 53.

Seip was asked to take a lie detector test, and he agreed. During the test, he was questioned about his story concerning his assailant. Trial Tr. at 40–41.

At about 6:30 P.M., Gellerman took a pack of bullets from Seip's belt and observed that they were hollow-point bullets. Trial Tr. at 45–46. Gellerman then told Seip, "Now I got something to hold you on . . . You have hollow-point bullets and they're illegal." Seip told Gellerman, "You're wrong." He took the position that, as a police reservist, he was entitled to carry hollow-point, or "dum-dum," bullets. Trial Tr. at 46. Nonetheless, at about 7:30 P.M., Seip was arrested for possession of hollow-point bullets. Trial Tr. at 46. Thus, from 2:30 P.M. until 6:30 or 7:30 P.M., Seip remained voluntarily in the police station in order to answer questions concerning the firing of his pistol in the basement of City Hall.[2]

At about 8:00 P.M., Seip was placed in a jail cell. Trial Tr. at 52. He remained there until he was released on bail at 3:00 A.M. the next morning.

When Seip's case came before the municipal court, the charge was dismissed. Trial Tr. at 94–95.

Seip testified that because of the arrest, his license to carry a pistol was revoked, and he was dismissed by the police reserves. Trial Tr. at 65–66. He also testified that he has not been able to get a job since the arrest. Trial Tr. at 72.

---

**1.** The appellate opinion characterized Gellerman's reported statement as being made in response to his discovery that Seip was "a private security officer," slip op. at 5. This is incorrect. Gellerman must have been aware that Seip—who could not have been wearing a police uniform or badge—was employed by a private agency. What Gellerman discovered was that Seip was a *police reservist*—a sort of volunteer policeman—for the City of Elizabeth.

**2.** The appellate opinion characterized this period as follows: "Plaintiff was held at the police station for approximately four hours before the 'dum-dum' bullets were found in his gun [sic] . . . Prior to that time, plaintiff was not told why he was being held." Slip op. at 5.

In his complaint, Seip asserted one count: that defendants "did willfully and maliciously without legal or justifiable cause, caused plaintiff to be deprived of his liberty without due process of law by pressing criminal charges against him." In the pretrial stipulation and order, signed by then-Magistrate Robert Cowen on May 14, 1985, the plaintiff stated his case as follows: "Plaintiff intends to prove he was falsely arrested, maliciously prosecuted, and deprived of his civil rights." As damages, he intended to prove lost wages, the deprivation of the use of his pistol, damage to reputation, and deprivation of liberty.

During the trial, it became clear that the plaintiff himself believed that it was illegal for him to carry hollow-point bullets:

THE WITNESS: If I was being held for hollow points, they [the other guards] should have been held, too.

THE COURT: Were they breaking the law?

THE WITNESS: Well, they're carrying them, right.

THE COURT: Were they breaking the law?

THE WITNESS: In my opinion they were.

Trial Tr. at 83.

Moreover, plaintiff's attorney admitted that he could not show that his client was legally entitled, as a reservist or as a private security officer, to carry hollow-point bullets. Trial Tr. at 115. Conceding this point, plaintiff's attorney argued instead that defendants' failure to arrest other security guards who were also carrying hollow-point bullets was unconstitutional discrimination. Trial Tr. at 116–117.

However, "proof of the actual existence of probable cause is an absolute bar ... in an action under § 1983" alleging false arrest and malicious prosecution. *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir.1980); *see Losch v. Borough of Parkesburg*, 736 F.2d 903, 907 (3d Cir.1984).

It is possible, of course, that the arrest was motivated by a desire to punish Seip for belonging to the police reserves. It is also possible that the close scrutiny paid to Seip on this day resulted from the firing of his pistol in the basement of City Hall. However, under the applicable law neither possibility had any bearing on the viability of Seip's § 1983 claim.

At trial, I stated the above standard and found, after the presentation of plaintiff's case, that it had not been met. Trial Tr. at 126. I refused to allow the plaintiff to amend his complaint to allege unconstitutional confinement in the period before his arrest, because the plaintiff himself said that he was not confined during that period. Trial Tr. at 122–123. The dismissal of the case against the individual defendants, of course, left no cause of action against the City.

No appeal was taken from this dismissal.

*The Fee Award*

The City moved for an award of fees. At oral argument on the motion, I held that there "was not the slightest effort to produce evidence against the City of Newark." Fees Tr. at 2. I then awarded the City Attorney's fees in the amount of $25.00 per hour, for a total amount of $700.00.

The Third Circuit has agreed that the plaintiff's claims against the City were frivolous, slip op. at 7. However, it reversed for recalculation of the amount based on the following considerations:

1) The award should have been only for work performed in defending the City, and not for work performed in defending the individual defendants.

2) The award should only include work done up to the point at which the defendant City could have moved for, and won a motion to dismiss under the standard of *Frazier v. SEPTA*, 785 F.2d 65 (3d Cir. 1986). I will apply these considerations one at a time to modify the fee award.

*1. Limiting the Award to Work Performed for the City.*

■ All three defendants were represented by the same lawyer, John Pidgeon, of the Newark Corporation Counsel. It is not possible to determine on this record whether the work performed by Pidgeon at

any given time can be apportioned between the defendants.

However, any liability found by the City in this lawsuit could only have come about as a result of a finding of liability on the part of the individuals. A finding of no liability on the part of the individual defendants would have—and, as it happens, did—completely exculpate the City. Even if the individual defendants had retained independent counsel, the attorney for the City would have failed in his duty to his client had he not independently done everything possible to demonstrate their freedom from liability. I find, therefore, that all work performed for the individual defendants was performed concurrently for the City, and fees may be awarded for such work.

*2. Limiting the Fees under Frazier.*

■ The Court of Appeals determined that the defendant City could have moved for a dismissal for lack of specificity under *Frazier v. SEPTA,* 785 F.2d 65 (3d Cir. 1986). The Court of Appeals held that "as Seip failed to allege any facts necessary to establish liability under *Monell* even after presenting his entire case, it is clear that the City could have prevailed on an earlier motion under the *Frazier* standard." Slip op. at 8. This trial was held on July 23, 1985. *Frazier v. SEPTA* was decided on March 4, 1986. *See Rotolo v. Borough of Charleroi,* 532 F.2d 920, 923 (3d Cir.1976) (vacating dismissal of civil rights action on specificity grounds); *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir.1978) (same).

It does appear, on reviewing the record, that the City could have brought a successful motion to dismiss after the entry of the pretrial stipulation on May 20, 1985. This is because the plaintiff's factual contentions in the stipulation make no allegations against the City.

An examination of attorney Pidgeon's affidavit shows that fifteen hours of work were performed after the pretrial conference. This work was undoubtedly required on behalf of the individual defendants, but it should not be counted as work performed for the City. Although the motion to dismiss itself would have been compensible, I will not speculate on the amount of time such a motion would have required.

This leaves the City with twelve compensable hours. At the fees hearing, I decided, in part on my evaluation of plaintiff's ability to pay, to award the defendant $25.00 per hour for the work of attorney Pidgeon. Fees Tr. at 2–3. As the Court of Appeals decision leaves this figure intact, I will award the defendant $300.00 in attorneys' fees. As did the original award, this award "will stand as a precedent so that others similarly situated will understand" that § 1983 does not allow plaintiffs to "bring any kind of a lawsuit no matter how unmeritorious ... and simply roll the dice."