# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1191

_____

Terrie A. Withers; Alvin L. Smith,　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　Appellants,　　　　　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　*　Western District of Missouri.
Dick's Sporting Goods, Inc.,　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　Appellee.　　　　　　　*

_____

Submitted: December 14, 2010
Filed: March 4, 2011

_____

Before RILEY, Chief Judge, BEAM and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

This is a customer discrimination case brought under 42 U.S.C. § 1981. We affirm the district court's[1] grant of summary judgment in favor of Dick's Sporting Goods, Inc., because there exists no genuine issue of material fact and Dick's is entitled to judgment as a matter of law, even viewing the evidence in the light most favorable to Terrie Withers and Alvin Smith.

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

## I.   BACKGROUND[2]

Dick's Sporting Goods, Inc., is a sporting goods retailer with many store locations, including one in the Ward Parkway Mall in Kansas City. Dick's has official policies prohibiting discrimination and harassment on the basis of race, as well as policies prohibiting targeting customers for surveillance on the basis of race. It is disputed whether Dick's practice conforms with its policies. At the time in question, one of Dick's loss prevention procedures was "customer service," meaning Dick's employees were instructed to greet and offer assistance to all customers, including those engaging in behavior that the employee believed to be suspicious. Store employees, including managers, who observed suspicious behavior in the store would continue to observe the individuals and offer them assistance.

On December 9, 2004, Withers and Smith (Appellants), both African Americans, and their eight-year-old daughter went into the Ward Parkway Dick's to return several pairs of shoes they had previously purchased as Christmas gifts. Although Appellants had recently purchased the shoes, they only had a receipt for one pair. Withers called Dick's prior to their visit to make sure Dick's would take the shoes back without a receipt. She spoke on the phone with Ken Shumaker, who assured Withers that if the shoes were in the box and had not been worn, there would be no problem. Shumaker also happened to be the man at the counter when Appellants attempted to return the shoes. When Withers first approached and stated her business to Shumaker, he stated that Withers could not return the shoes without a receipt. Withers then reminded him of their previous phone conversation and Shumaker reluctantly allowed the returns. Withers received a store credit for the return price of the items.

_____

[2]As this is an appeal from the grant of summary judgment, we review and recite the facts in the light most favorable to Withers and Smith as the non-moving parties. Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 814 n.3 (8th Cir. 2010).

With the store credit in hand, Withers, Smith, and their daughter remained at Dick's and shopped that day. Shumaker appeared in nearly all of the departments they visited, asking if they needed any help, to which they repeatedly said, "No." It was clear to Withers that Shumaker was not genuinely offering assistance, but rather was watching them purposely, in an unfriendly and accusatory manner. Upset and humiliated, Withers and Smith decided to pay for the items they had selected with the store credit and left the store. After these purchases, a balance remained on the store credit.

Withers, Smith and their daughter returned to Dick's the next day, December 10, 2004, to finish shopping and spend the remaining credit. Shumaker made eye contact with Withers when she entered the store. And, as Appellants made their way through various departments, they noticed numerous sales associates staring at them the entire time. Withers and Smith were asked repeatedly if they needed help, and Appellants noticed security pages broadcast over the intercom each time they changed departments. Appellants claim they knew the pages were to alert all Dick's employees to watch them. At one point, Withers noticed a Caucasian female associate squatting down, peeking at them through a rack of clothing, and Withers asked the young woman why she was looking at them. The associate apologized and said she did not mean to offend Withers. At the time, Withers was holding a t-shirt she intended to purchase but Withers put the shirt back after this encounter.

This was the "last straw" for Withers, who tearfully determined that she "had to get out of there." Appellants went to the cash register to buy the items already in their cart, and, during checkout, a manager assisted the cashier the whole time, placing each item purchased in a sack on the floor out of Wither's reach. At one point, the manager claimed that one of the items did not have the correct price tag, which Withers took as an insinuation that she had switched the tag. Another associate who went to check a like-kind item discovered that all of the items were mistagged, and Withers then received the price on the tag. The manager kept Appellants' sacks on the

floor until Withers paid. When they left, Withers and Smith noticed that many Dick's employees had positioned themselves at the front door, watching them the entire time. After the December 10 transactions, about $45 still remained on the store credit.

Following these encounters, Withers contacted Dick's via e-mail to complain of the alleged discriminatory treatment. She later spoke to a Dick's representative who did not address the problem, but offered Withers a gift card. This lawsuit ensued.

The district court granted summary judgment in favor of Dick's. In doing so, the court discussed only the third and fourth elements of the § 1981 claim,[3] noting that, only for purposes of its summary judgment motion, Dick's did not dispute that Withers and Smith were members of a protected class or that there was discriminatory intent. The court's analysis, then, focused on whether Withers and Smith demonstrated that they were engaged in a protected activity and whether Dick's interfered with any such activity. As to the protected activity prong, the court held that when Withers selected the t-shirt from the rack, decided to purchase it, but eventually put it back, she demonstrated a tangible attempt to contract and was engaged in a protected activity. Smith, on the other hand, was not engaged in any protected activity, held the district court, because there was no evidence that during the entire shopping trip, he had formed a specific intent to purchase a particular item and was unable to do so. Finally, the court held that despite the fact that Withers

_____

[3]Our court has divided the § 1981 analysis into four parts: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant." Gregory v. Dillard's, Inc., 565 F.3d 464, 469 (8th Cir.) (en banc), cert. denied, 130 S. Ct. 628 (2009). As it was in Gregory, the disputed issues in this appeal are elements (3) and (4)–what constitutes "protected activity" and whether there was "interference with that activity." Id.

engaged in a protected activity, Dick's did not interfere, as that term has been legally defined in this circuit. Smith and Withers appeal.

## II.    DISCUSSION

We review a § 1981 claim de novo, construing the record in the light most favorable to the non-moving party. Johnson v. AT&T Corp., 422 F.3d 756, 760 (8th Cir. 2005). "Summary judgment is appropriate only if the evidence establishes that there exists no genuine issue of material fact and that the moving party, [Dick's], is entitled to judgment as a matter of law." Id.

Section 1981 provides that all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "First enacted in 1866, the statute was amended in 1991 to define 'make and enforce contracts' to include 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" Gregory v. Dillard's, Inc., 565 F.3d 464, 468 (8th Cir.) (en banc) (quoting 42 U.S.C. § 1981(b)), cert. denied, 130 S. Ct. 628 (2009). Because the focus of section 1981 is on contractual obligations, "'[a]ny claim brought under § 1981 . . . must initially identify an impaired "contractual relationship" under which the plaintiff has rights.'" Id. at 468-69 (quoting Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006)). Section 1981 "protects the would-be contractor along with those who already have made contracts." Domino's, 546 U.S. at 476. So, § 1981 offers relief "when racial discrimination blocks the creation of a contractual relationship" that does not yet exist, such as those contracts that might exist in the retail context under certain circumstances. Id. Accordingly, § 1981 prohibits discrimination in "all phases and incidents" of a contractual relationship, and our analysis includes scrutiny of certain behavior in the retail context preceding a sale. Rivers v. Roadway Express, Inc., 511 U.S. 298, 302 (1994).

Dick's does not base its claim for summary judgment on the ground that Withers and Smith failed to allege or present a disputed issue of fact concerning discriminatory intent, nor did the district court base its opinion on that ground.[4] Withers and Smith challenge the district court's holding on appeal, arguing that the court failed to recognize that Withers and Smith had an ongoing contractual relationship with Dick's by virtue of the store credit issued following their returns, that Dick's impaired their ability to contract, and that Gregory is distinguishable on the facts, or alternatively, wrongly decided.

## A.    Protected Activity

To show protected activity in the retail context, "§ 1981 plaintiffs are required to demonstrate that they actively sought to enter into a contract with the retailer. There must have been some tangible attempt to contract." Green v. Dillard's, Inc., 483 F.3d 533, 538 (8th Cir. 2007) (internal quotation omitted).  More specifically, to satisfy this element in the retail shopping context, a shopper "must show an attempt to purchase, involving a specific intent to purchase an item, and a step toward completing that purchase." Gregory, 565 F.3d at 470.  Merely entering a retail establishment is not a protected activity under § 1981, as the mere expectation of being treated without discrimination while shopping is not enough. Id.  Whether a shopper has taken the "step toward" completing a purchase, or at what point a

_____

[4]Accordingly, we do not discuss in detail the evidence presented by Appellants on this issue.  Like the plaintiffs in Gregory, Appellants here presented evidence from several witnesses to support their allegations that Dick's acted with discriminatory intent.  They submitted testimony from former Dick's employees that described Dick's past discriminatory behavior, including, at best, internal store practices of racial insensitivity and, at worst, the targeting of minority shoppers for enhanced suspicion and harassment.

shopper's interactions with a merchant ripen into a protected "tangible attempt to contract" is by definition an intensely fact-based determination.

First, we agree with the district court that for purposes of summary judgment, Withers satisfied the third element of her § 1981 claim and was engaged in protected activity on December 10 while shopping at Dick's. At the time Withers encountered the sales associate peeking through a clothing rack close to her, Withers had selected a t-shirt she wanted to purchase. It was at this point, according to Withers, that she interrupted her shopping, put the t-shirt back on the rack, and proceeded to the checkout counter to pay for the items in her shopping cart. Given Withers' testimony that she intended to purchase the t-shirt before she became so upset by the clerk's behavior, we agree with the district court that Withers had taken a step toward purchasing the t-shirt and thus had made a tangible attempt to contract.

We also agree with the district court's assessment that Smith is unable to establish that he was engaged in any protected activity required to establish a prima facie case under § 1981. Regarding the December 9 shopping trip, Smith testified that other than Withers telling him he could not purchase certain items, to which he obliged, there was nothing that he wanted to buy that he could not buy. Again, during the December 10 shopping experience, Smith testified that while he, too, felt as if the Dick's employees were "watching" him, he stated that the only item he wanted to purchase was a pair of shoes that Withers made him put back. At that point, he just let Withers shop as she pleased and he did not interject. Smith stated that he saw his role as "basically . . . just there for the support [and to] carry the bags." So, according to his own testimony, Smith made no step toward purchasing any items that was thwarted by anyone but Withers during his visits to Dick's on December 9 and 10. Smith is therefore unable to establish any protected activity for purposes of his claim.

The crux of Withers' and Smith's claims, however, is that, because they had store credit to spend at Dick's following the return of the merchandise, the entirety of their time at Dick's on both shopping days constituted protected activity because they had rights under an existing contractual relationship yet to be consummated. This, according to Withers and Smith, necessarily establishes the "protected activity" element of their claims. Like the district court, we reject this argument.

Appellants liken the instant circumstance of having store credit in hand when they entered Dick's to the situation faced by African American bank customers in Hall v. Pennsylvania State Police, 570 F.2d 86, 91-92 (3rd Cir. 1978), who were photographed upon entering the bank pursuant to a racially-based surveillance scheme. The Third Circuit in Hall framed the issue as one involving "contractual customers," and focused its analysis on the fourth prong of our instant query–actionable interference. Id. at 92. The focus of Hall's analysis, then, was not necessarily on whether those entering the bank were contractual customers. The Gregory court discussed Hall and found the brief mention of "contractual customers" in Hall inapposite to the claims of the retail shoppers in Gregory. 565 F.3d at 472 n.8. Yet, to the extent those in Hall were considered contractual customers and thus engaged in protected activity, Appellants claim they, too, by virtue of the issuance of the store credit in this case, have satisfied this element of their § 1981 claim. We disagree.

The fact that Appellants had store credit as their form of payment is a non sequitur in the § 1981 analysis. Appellants did not have an "existing contractual relationship" that constituted protected activity each time they stepped into a Dick's store until the time the store credit was entirely used. At best, the store credit vested Appellants with the right to pay for their merchandise with the store credit if they chose to do so, and for Dick's to honor the store credit as payment if presented. As the district court held, after Appellants received the store credit in exchange for the returned items, that contract was completed. When Appellants proceeded to shop, our

only query is whether, and at what point, they attempted to make a purchase, which, as stated earlier, involves a specific intent to purchase an item, and a step toward completing that purchase. Gregory, 565 F.3d at 470. It is the shopping experience upon which we focus, regardless of the form of payment used by the shopper.

Our determination does not, contrary to Appellants' argument, encourage retailers such as Dick's to issue store credit and then maliciously or onerously attempt to run off all customers holding store credit so as to prevent them from using the store credit to save money for the establishment. Nor do we suggest, as Appellants further argue, that Withers and Smith were required to merely "put up with Dick's racist behavior in order to obtain satisfaction of the debt owed them." As noted earlier, these are fact-based analyses, and no one has a free pass nor is anyone required to endure any such behavior. Indeed, each time a shopper enters an establishment, regardless of how they might pay for their anticipated purchases, if they make a legally sufficient attempt to purchase but are thwarted in their efforts, they have a cognizable claim under § 1981.

## B.     Interference

At bottom, regardless of our determination as to whether Withers and Smith were engaged in protected activity under § 1981, their claims ultimately fail because neither appellant can legally establish the fourth element of their prima facie case at this stage–that Dick's unlawfully interfered with their protected activity. "To demonstrate unlawful interference by a merchant under § 1981, the fourth element, a plaintiff must show that the retailer 'thwarted' the shopper's attempt to make a contract." Gregory, 565 F.3d at 471. "By 'thwart,' we mean that interference is established where a merchant 'blocks' the creation of a contractual relationship." Id. at 471; see also Garrett v. Tandy Corp., 295 F.3d 94, 101 (1st Cir. 2002) (holding that the active trailing of a minority shopper in the store amounted to no more than an

"unadorned"–and legally insufficient–claim that the plaintiff was carefully watched while on the premises).

This element is satisfied, for example, "where a retailer asks a customer to leave a retail establishment in order to prevent the customer from making a purchase," Gregory, 565 F.3d at 471, or, as in Green,

> where a sales clerk "explicitly refused service" to two shoppers based on race, "treated them at all times with pronounced hostility," "discouraged her coworker from assisting them by questioning their ability to pay," directed "a most egregious racial slur" and "forceful racial insult" at the shoppers, and "actively hindered" the efforts of another sales clerk to serve the customers.

Id. (quoting Green, 483 F.3d at 539). However, we have clearly established that discriminatory surveillance by a retailer, or mere offending conduct, does not demonstrate interference with a protected activity and any allegations of such activity are insufficient to state a claim under § 1981. Id. at 471, 473. "Racially biased watchfulness, however reprehensible, does not 'block' a shopper's attempt to contract." Id. at 472.

The instant case is in material respects on all fours with the claims of certain plaintiffs in Gregory. There, claimants Alberta and Carla Turner, along with Carla's children, were shopping in the children's department at Dillard's. Id. at 475. When Carla and her daughter exited a fitting room, a sales associate and a security guard were outside looking at them, and the guard followed Carla as she walked through the store to rejoin Alberta. Id. The two women approached the cash register with items but ultimately abandoned their purchase due to the surveillance and ill treatment they received. Id. While the events were most certainly unfortunate, "the evidence presented by the Turners show[ed] at most discriminatory surveillance and watchfulness, which is not actionable interference under § 1981." Id. Such conduct

-10-

did not satisfy the requirement that a defendant "block" or "thwart" the creation of a contractual relationship, as this court requires.  Id. at 476.

Withers and Smith fail to establish any meaningful distinction between the instant circumstances and those discussed by the court in Gregory.  The claims made today by Withers and Smith are not significantly or sufficiently distinct from those made by the plaintiffs in Gregory.  This similarity drives our analysis.  The facts as set out by Withers and Smith demonstrate only close surveillance, possibly rude assistance, and inappropriate treatment.  The record is devoid, however, of any allegation that Dick's otherwise blocked or thwarted Withers' and Smith's tangible attempt to contract.  By Withers' own admission, for example, the sales associate that Withers noticed quite frequently watching her that day at Dick's in various areas of the store, who was also the one Withers discovered peeking at her through the rack of clothes, never told Withers that she was not going to assist Withers and never used any racist language or insulting words.  Indeed, Withers testified that at no time during her shopping experience at Dick's did any Dick's employee tell Withers that she was not allowed to purchase something.  As we have stated previously, we do not establish that a certain level of race discrimination in the retail context is acceptable.  It is simply that the behavior alleged herein is not regulated by federal law.  Id. at 476.

## III.  CONCLUSION

As there is no meaningful distinction between our binding precedent in Gregory and the facts of this case, we affirm.

_____

-11-