Kirk SMITH, a minor suing by Vernon Smith and Margaret Smith, his parents and next of friend

v.

Alfred E. WEBB, Individually and as principal of Whitemarsh Jr. High School, Whitemarsh Township, Montgomery County, Pennsylvania.

Civ. A. No. 73–2727.

United States District Court, E. D. Pennsylvania.

Aug. 9, 1976.

---

Richard L. Cole, Jr., Rogers, King & Cole, Norristown, Pa., for plaintiff.

H. Kenneth Tull, Wright, Thistle & Gibbons, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Presently before the Court are the cross-motions of the plaintiff and defendant for summary judgment. Plaintiff, Kirk Smith, brought this action alleging that the defendant, Alfred E. Webb, is liable to him in damages under 42 U.S.C. § 1983 [1] for the deprivation of his constitutional right to a hearing prior to his expulsion from public school. For the reasons stated herein, we have determined that we must grant the defendant's motion for summary judgment and deny the plaintiff's motion for summary judgment.

In support of his motion for summary judgment, the defendant has submitted his affidavit and the affidavit of John Hepp. These two affidavits contain exhibits whose authenticity has not been challenged. The plaintiff has submitted no affidavits in support of his motion for summary judgment but has chosen to rely upon the uncontradicted affidavits and exhibits submitted by the defendant.

■ In a motion for summary judgment, all doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *First Pa. B. & T. Co. v. United States Life Ins. Co.*, 421 F.2d 959, 962 (3d Cir. 1969). The burden is on the party moving for summary judgment to demonstrate that no genuine issue as to any material fact exists, and that he is entitled to judgment as a matter of law. As stated in 6 *Moore's Federal Practice*, ¶ 56.15[3], at 56–463 to 467:

> The Courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable law, entitle him to judgment as a matter of law.
>
> The Courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. (footnotes omitted).

■ Under Rule 56, once a properly supported summary judgment motion is made, an adverse party may not rest upon the mere allegations of his pleading. His response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if otherwise appropriate, shall be entered against him. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Chapman v. Rudd Paint & Varnish Company*, 409 F.2d 635, 643–644 (9th Cir. 1967). Accordingly, we have drawn all inferences favorable to the plaintiffs in considering the defendant's motion for summary judgment and find there is no genuine issue of material fact and that the defendant is entitled to summary judgment as a matter of law.

Plaintiff, Kirk Smith, was a student at Whitemarsh Junior High School (Whitemarsh) from 1969 until 1971. During that time, Alfred E. Webb was the principal of Whitemarsh [2] with the overall responsibility

---

1. 42 U.S.C. § 1983 reads as follows:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Mr. Webb is now retired from his position with the Colonial School District, which includes Whitemarsh Junior High School.

for the conduct of the school's administration, including school discipline and attendance. The plaintiff contends that Mr. Webb, in the exercise of his official duties as principal of Whitemarsh, violated the plaintiff's constitutional rights when Mr. Webb permanently expelled him from school without affording him an adequate hearing under the Due Process Clause of the Fourteenth Amendment. A careful review of the uncontested facts in this case establishes that the due process procedures afforded Kirk Smith were more than adequate to satisfy the requirements of the Fourteenth Amendment and therefore the defendant is entitled to judgment as a matter of law.

Kirk Smith was registered as a student at Whitemarsh in September, 1969. Immediately after registering at Whitemarsh, Kirk Smith became involved in numerous incidents of misconduct which resulted in disciplinary action. The school records reflect that during the 1969–1970 school year, Kirk Smith was reported sixteen times for serious disciplinary and attendance infractions and he was suspended for such infractions four times. During the 1970–1971 school year, the school record shows that Kirk Smith was involved in at least seventeen serious disciplinary and attendance infractions which resulted in his again being suspended four times. These reported infractions include incidents of cutting classes, threatening teachers, talking back to teachers, lying, using obscenities, yelling and being disruptive in class, threatening other students and stealing.

Before any of the eight suspensions noted above occurred, the following procedures were observed. A faculty member would first file a charge of misconduct against Kirk Smith with John Hepp, the Administrative Assistant at Whitemarsh during the 1969–1970, 1970–1971 and 1971–1972 school years. Mr. Hepp's duties included, among others, the handling of discipline and attendance matters. After a faculty member filed charges, Mr. Hepp would review the charges, confront Kirk Smith with the charges against him and give him an opportunity to dispute the charges and explain his view of the incident. Mr. Hepp would then determine if the charges were well founded and, if so, and if sufficiently serious, he would suspend Kirk Smith. Kirk Smith's parents were notified of each suspension by a letter which contained a short description of the reasons for the suspension. The school record reveals that there were numerous communications between Kirk Smith's parents and school officials in connection with Kirk Smith's disciplinary and behavioral problems. Also, defendant Webb was kept well informed of, and was aware of, the extensive disciplinary record of Kirk Smith during the 1969–1970 and 1970–1971 school years.

After the commencement of the 1971–1972 school year, Kirk Smith's problems at Whitemarsh continued. During the month of September, Kirk Smith was truant for at least nine days. He cut classes on another day and as a result was suspended for three days. On October 7, 1971, Kirk Smith returned to school from a suspension, cut his morning classes and left school with another student. The two students were picked up hitchhiking by the School Home and School Visitor. A report of the incident was made to Mr. Hepp, who reviewed the charges, confronted Kirk Smith with the charges against him and gave Kirk Smith an opportunity to refute the charges and give his version of the incident. Mr. Hepp determined that the charges were accurate and serious and suspended Kirk Smith for five days. Kirk Smith's parents then received written notice of the suspension and the reasons therefor. Because of the seriousness of the infraction [3] involved and Kirk Smith's prior disciplinary record, Mr. Hepp and Mr. Webb held a conference concerning Kirk Smith. At the conference, the prior disciplinary and attendance record of Kirk Smith was thoroughly reviewed. As a result of this conference and a review of

---

**3.** This incident was viewed as particularly serious by Mr. Hepp and Mr. Webb because Kirk Smith had involved another student who, prior to this incident, had not been a disciplinary problem at Whitemarsh.

the prior record of Kirk Smith, and in light of the fact that Kirk Smith had shown no improvement in his discipline and attendance record, Mr. Webb concluded that Kirk Smith was a truant and a disruptive influence in Whitemarsh and that his conduct in connection with these matters was incorrigible. Therefore, on October 8, 1971, Mr. Webb signed a petition filed in the Court of Common Pleas of Montgomery County, Pennsylvania, Juvenile Division, captioned, "In re: Kirk Smith, A juvenile, No. 6033", alleging that Kirk Smith was incorrigible, a truant and a disruptive influence at Whitemarsh. The purpose of this petition, filed pursuant to the Juvenile Court Law then in effect, 11 P.S. § 243 et seq.,[4] was to have Kirk Smith's status as a student at Whitemarsh terminated. Mr. Webb filed the petition with the Court in lieu of a hearing before the school board[5] because of his belief that juvenile court action would be preferable in order to accomplish: (1) the removal of Kirk Smith from his current home environment; (2) the avoidance of the stigma that would attach to Kirk Smith as a result of being permanently expelled by the school board; and (3) the placement of Kirk Smith by the Court in a school environment which would better accommodate his educational and emotional needs.[6]

As a result of the filing of the petition in the juvenile court, a conference was held on October 27, 1971 at the office of the Juvenile Probation Department of Montgomery County. The conference was attended by Mr. Webb, Mr. Hepp, Alice Ter-Harr, the Home and School Visitor for Whitemarsh, Kirk Smith and Mr. and Mrs. Smith, Kirk Smith's parents. The conference was conducted by James W. Reustle, the Assistant Juvenile Probation Officer for Montgomery County. The purpose of the conference was to discuss the petition filed by Mr. Webb in connection with Kirk Smith. At the conference, Kirk Smith's discipline and attendance record was discussed in detail, as was the position of Mr. Webb and Alice Ter-Harr that Kirk Smith should be terminated as a student at Whitemarsh because of his chronic discipline and attendance infractions. As a result of the conference, it was agreed by all parties that the petition filed by Mr. Webb in connection with Kirk Smith would not be pursued at that time upon the conditions that: (1) Kirk Smith immediately see the school psychologist; (2) Kirk Smith attend all his classes without any further illegal cuts or absences; and (3) Kirk Smith not cause any further problems in the classroom with any teachers or students. It was also agreed that should any of the above conditions be broken by Kirk Smith, the petition would be reactivated. If Kirk Smith satisfactorily completed the school year, the petition would be dismissed.

On November 15, 1972, it was reported to Mr. Hepp that Kirk Smith had created a disturbance in his art class. Mr. Hepp met with Kirk Smith after the incident, confronted him with the charge made against him, gave him an opportunity to speak on his own behalf and to give his version of the incident. Mr. Hepp then made a determination that Kirk Smith had in his possession in his art class a spray can of tear gas, as alleged, and that Kirk Smith had been insolent to the teacher when the tear gas was taken from him. Mr. Hepp also found that Kirk Smith had been loud and abusive and had disrupted the class. Mr. Hepp advised Kirk Smith that his conduct was in violation of the agreement reached at the Octo-

4. The Juvenile Court Law was amended on December 6, 1972 by the new Juvenile Act, 11 P.S. § 50–101 et seq.

5. 24 P.S. § 13–1318 provides that the Board of School Directors may expel a student after it holds a hearing thereon as follows:
   Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or misconduct, and any principal or teacher suspending any pupil shall promptly notify the dis-

trict superintendent or secretary of the board of school directors. The board may, after a proper hearing, suspend such child for such time as it may determine, or may permanently expel him. Such hearings, suspension, or expulsion may be delegated to a duly authorized committee of the board.

6. Proceedings in the juvenile court have been used as an alternative by other school administrators in similar circumstances.

ber 27, 1971 juvenile court conference and that he would recommend reactivation of the petition. Mr. Hepp then suspended Kirk Smith indefinitely pending the outcome of the court proceeding. Mr. and Mrs. Smith were notified by letter of the suspension of Kirk Smith and the reasons therefor.

Mr. Webb was advised by Mr. Hepp that Kirk Smith had been involved in a disturbance in his art class stemming from his possession of a can of tear gas, that Kirk Smith had been advised that his conduct was in violation of the October 27th agreement, and that Kirk Smith had been suspended pending the outcome of the hearing on the reactivated Court petition. Mr. Webb approved of all the actions taken by Mr. Hepp and advised Mr. Hepp to take immediate steps to have a hearing scheduled on the juvenile court petition. Mr. Webb received notice from the Court that there would be a hearing on the petition, which hearing took place on December 2, 1971. Mr. Webb furnished the juvenile court with a summary of Kirk Smith's discipline and attendance record and testified that in his opinion nothing more could be done by Whitemarsh to improve Kirk Smith's behavior and that he did not want Kirk Smith to return to Whitemarsh. Mr. Smith, Kirk Smith's father, also testified at the hearing and acknowledged Kirk Smith's infractions at Whitemarsh. Mary Flynn, a caseworker with Catholic Social Service, testified that in her opinion Kirk Smith was not delinquent but had emotional problems and a learning disability and that he needed a change in his school environment. Ms. Flynn testified that she would like to take Kirk Smith under her care. At the close of the hearing, the following Order was entered by the Court:

> All right. The Court is not going to make an adjudication of this matter, but will refer the case to the, it will refer Kirk Smith, the boy involved in this petition, to the Catholic Social Service who will then make a report to me when they are ready to take some action.

> All right. We will continue the case then. Thank you very much, all of you, who came in. He is remanded to the custody of his parents.

Kirk Smith did not return as a student to Whitemarsh after the December 2, 1971 hearing. Mr. Webb, following the hearing, believed that the Court had ordered Kirk Smith placed in a private school by the Catholic Social Service and that he was not to return to Whitemarsh.

■■■ It is well settled that there are two essential elements to a cause of action under 42 U.S.C. § 1983. In *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970), the United States Supreme Court stated:

> The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

It is admitted that the defendant, Mr. Webb, acted under color of state law within the purview of Section 1983 and that his activities constitute state action within the ambit of the Fourteenth Amendment. It is now well settled that a state, such as Pennsylvania, which chooses to extend the right to an education to people of plaintiff's class generally, creates a legitimate claim of entitlement in such a plaintiff to a public education. "[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause." *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975).[7]

---

7. The United States Supreme Court, in addition to holding that the entitlement to a public education is a property interest to which due process attaches, also stated that a suspension

Therefore, since it is clear that the property interest in continued public education is one to which the Fourteenth Amendment applies, the question is presented as to whether the procedures employed by the defendant in this case in connection with the termination of Kirk Smith as a student at Whitemarsh complied with the proscriptions of the Due Process Clause of the Fourteenth Amendment. "[T]he interpretation and application of the Due Process Clause are intensely practical matters" [8] and "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." [9] The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," [10] a right that "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest." [11]

As the Supreme Court stated in its recent decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976):

This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of criminal conviction, is a principle basic to our society." (citations omitted).

The Court in *Mathews v. Eldridge* then identified the following factors which should be considered in determining whether the procedures adopted by a state complied with due process:

[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 96 S.Ct. at 903 (citations omitted).

In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that students facing even temporary suspensions have interests protected by the Due Process Clause and that due process requires that in connection with a short suspension, a student be given notice of the charges against him and, if the student denies them, be afforded an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Court noted that in the case of such short suspensions, the notice given and the time of the hearing or confrontation may be simultaneous so long as the student is first "told what he is accused of doing and what the basis of the accusation is." 419 U.S. at 582, 95 S.Ct. at 740. The Court in *Goss* then stated that "[L]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." 419 U.S. at 584, 95 S.Ct. at 741. We must therefore examine the competing interests of the parties involved herein to determine whether the procedures followed in this case comply with the requisites of the Due Process Clause of the Fourteenth Amendment.

The interest of Kirk Smith in not being mistakenly expelled from public school is

which may damage a student's standing in his community is a deprivation of liberty within the meaning of the Due Process Clause of the Fourteenth Amendment. 419 U.S. at 574–575, 95 S.Ct. at 736.

**8.** *Goss v. Lopez,* 419 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975).

**9.** *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

**10.** *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

**11.** *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

self-evident.[12]  It is clear that "education is perhaps the most important function of state and local governments," *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954) and that a proper education is essential to the proper functioning of a citizen.  It is also clear that "[S]ome modicum of discipline and order is essential if the educational function is to be performed." *Goss, supra,* 419 U.S. at 580, 95 S.Ct. at 739.

■ A review of the record in this case convinces us that the procedures used by Mr. Webb in this case did not create a significant risk of an erroneous deprivation of Kirk Smith's right to a public education and that any additional procedural safeguards would not have lessened the probability of an erroneous deprivation. *Mathews v. Eldridge,* 96 S.Ct. at 903.  Kirk Smith's disciplinary and attendance record at Whitemarsh are well documented and not in dispute.  There is also no dispute over the fact that Kirk Smith was a disruptive influence at Whitemarsh.  Further, the record reveals that each time Kirk Smith was faced with a possible suspension for a short period of time, he was notified of the charges against him, confronted with such charges and was then permitted to give his explanation of the circumstances surrounding the incident, a procedure which fully complies with *Goss.*

As to the incident leading to his permanent expulsion, the record shows that Kirk Smith and his parents were advised and agreed that unless Kirk Smith maintained proper behavior at Whitemarsh for the remainder of the 1971–1972 school year, the juvenile court petition would be pressed to terminate his status as a student at Whitemarsh.  After finding that Kirk Smith had breached the agreement by causing a serious disturbance in his art class, and after confronting Kirk Smith with the charges against him in compliance with *Goss,* a juvenile court hearing was held before a distinguished Judge of that court and all interested parties were given an opportunity to testify concerning Kirk Smith's prior record and his future as a student at Whitemarsh.  At the close of the hearing, the Judge remanded Kirk Smith to the custody of his parents and referred him to the Catholic Social Services for counseling and placement in a private school.

We find that the procedures employed by Mr. Webb in connection with the expulsion of Kirk Smith more than complied with the requirements of the Due Process Clause.  Kirk Smith was given ample notice of the Court hearing and was advised of the purpose and nature of the hearing.  The hearing was impartially conducted by a distinguished jurist.  We find that no additional safeguards could have been employed in this case to further safeguard Kirk Smith's interest in his continued education at public expense.

The plaintiff argued for the first time in his brief in support of his motion for summary judgment that the defendant, Mr. Webb, did not comply with state law in expelling the plaintiff.  Plaintiff argues that the proper method for an administrator to follow in seeking to have a student expelled is a hearing before the school board pursuant to 24 P.S. § 13–1318.  Defendant, while conceding that a hearing before the school board is appropriate in an expulsion case, points out, however, that the procedure employed in this case, i. e., filing a petition before the juvenile court, is an alternative procedure often employed in such cases.  In an Order dated May 17, 1976, this Court refused to exercise its discretion to take jurisdiction of the pendent state claim and this Court again declines to rule on any such issue.  We hold that the procedural protections afforded Kirk Smith prior to the termination of his status as a student at Whitemarsh complied with requirements of the Due Process Clause of the Fourteenth Amendment.

Accordingly, the following Order is entered:

**12.**  As the Supreme Court noted in *Goss,* 419 U.S. at 579, 95 S.Ct. at 739, "The Due Process Clause will not shield him [a student] from suspensions properly imposed, but it deserves both his interest and the interest of the State if his suspension is in fact unwarranted."

## ORDER

AND NOW, this 9th day of August 1976, it is hereby ORDERED that the plaintiff's motion for summary judgment is DENIED and the defendant's motion for summary judgment is GRANTED. Judgment is hereby entered in favor of the defendant and against. the plaintiff.