Alexander ROMAN, et al.

v.

Marjorie APPLEBY, et al.

Civ. A. No. 78-3153.

United States District Court,
E.D. Pennsylvania.

Feb. 22, 1983.

---

**452**

John J. O'Brien, West Chester, Pa., for plaintiffs.

Edward S. Lawhorne, Media, Pa., for Penelope Hendry.

Edwin L. Scherlis, Frank, Margolis, Edelstein & Scherlis, Philadelphia, Pa., for Chester County Children's Services and Hendry.

Richard M. Shusterman, White & Williams, Philadelphia, Pa., for Marjorie Appleby and Downingtown Area School Dist.

Thomas P. Hamilton, Jr., Media, Pa., for Marjorie Appleby.

## MEMORANDUM

GILES, District Judge.

Alexander Roman, formerly a public school student in the Downingtown Senior High School, Downingtown, Pennsylvania, and his parents Steven and Ruth Roman, brought this civil rights action against the Downington Area School District, Marjorie Appleby, a school counselor, Chester County Children's Services ("CCCS"), and Penelope Hendry, a social worker for CCCS, alleging violations of rights guaranteed under the first and fourteenth amendments of the United States Constitution and section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiffs also assert pendent state claims for negligence and defamation. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that plaintiffs' amended complaint fails to state a claim upon which relief can be granted.

Pursuant to notice given by this court's order of September 3, 1982, and Fed.R. Civ.P. 12(b), the motions to dismiss shall be treated as motions for summary judgment since matters outside the pleadings shall be considered. *See Braden v. University of Pittsburgh,* 477 F.2d 1, 6 (3d Cir.1973).[1]

1. Considered shall be: a petition filed with the Common Pleas Court of Chester County by CCCS attached to the original complaint as Exhibit "A" and incorporated by reference into the amended complaint; a written report prepared by Appleby attached as Exhibit "B" to the original complaint; affidavits by Appleby and McMullen, the latter a certified school psychologist employed by Chester County Intermediate Unit, filed in September, 1982; and affidavits filed by the plaintiffs in November, 1982. Appleby's motion to strike plaintiffs' affidavit is denied in light of the court's ruling.

## I. FACTS

Between September 12, 1977 and October 19, 1977, Appleby conducted a series of approximately eight interviews with Alexander Roman, then a tenth grade student. (Complaint ¶ 16).[2] It was her opinion that he exhibited certain conduct consistent with an "inability to function in reality," a psychosis. (Complaint, ¶¶ 16, 20(c)(d)). The first interview was initiated by Alexander Roman, but the remainder were encouraged by Appleby. (Complaint, ¶¶ 17–18). Shortly after the first session, Alexander's mother called Appleby and acknowledged that her son was involved in counseling sessions with Appleby. (Exhibit B, p. 2. *See* note 1 *supra*). However, the parents never authorized Appleby during those sessions to question their son and induce responses with respect to his feelings about: his immediate family, including his affection or nonaffection or intimate relations for its members; the manner in which his parents had raised him; sex, masturbation, homosexuality and the "Oedipus complex"; or God, religion, heaven, hell and sin. (Complaint ¶¶ 19–20). During the counseling sessions Appleby told Alexander that: his parents were too strict; their religious views were too rigid and conservative; he could not function in reality; he was possibly psychotic; his fears of being a homosexual were normal for his age; and everyone experiences feelings of homosexuality. *Id.* Prior to October 19, 1978, Appleby failed to inform the parents of the content of her questions, the son's responses, and her opinions as expressed during the interviews. (Complaint ¶¶ 23–25).

On or about October 19, 1977, Appleby arranged a conference with the parents at the school at which time she voiced her opinions about Alexander derived from the counseling sessions and characterized his verbal and physical conduct which formed the basis for her opinions. (Exhibit B, p. 5). Appleby expressed to the parents her fear that Alexander's problem was serious and

that professional help for him was needed. She asked the Romans to contact Crisis Intervention, a mental health counseling service. The Romans did not seek help. After advising Mrs. Roman of her intention, Appleby made an oral referral of the matter to CCCS, *Id.* at p. 6, and recommended that Alexander be compelled to undergo psychiatric testing. (Complaint ¶ 27). CCCS assigned the investigation of the matter to Hendry. Hendry had independent contact with the parents during her agency investigation.

On or about January 30, 1978, CCCS filed a petition with the Court of Common Pleas of Chester County to have Alexander adjudicated a "dependent" pursuant to the Commonwealth of Pennsylvania's Juvenile Act of 1972, 11 P.S. § 50–101, *et seq.*, now substantially reenacted in 42 Pa.C.S.A. § 6301, *et seq.* (Complaint ¶ 30). Plaintiffs allege that the filing of the petition was capricious, unreasonable, without support in law and fact and a direct result of Appleby's referral and recommendation. (Complaint, ¶¶ 30–33).

The petition sought an order directing psychological and psychiatric evaluation and testing of Alexander. It alleged that he had demonstrated evidence of mental instability and emotional disturbance, was in need of psychiatric evaluation and possibly treatment, and that the parents had refused to cooperate and provide sufficient psychiatric care for the child. After conducting a hearing on February 17th and 24th, 1978, the petition was dismissed by the court. (Complaint, ¶ 36).

Plaintiffs allege that because of the emotional distress and humiliation caused by these events, Alexander transferred to a private school. (Complaint, ¶ 40). On February 14, 1978, Appleby wrote a report of her discussions with Alexander and delivered the report to CCCS and Hendry. Other employees at CCCS also read the report. (Complaint, ¶¶ 52–55). On February 15,

---

2. The parties are in substantial agreement regarding the facts of this case. However, since on a motion for summary judgment a district court must resolve all reasonable inferences, doubts and issues of credibility against the moving party, the statement of facts is based primarily upon the allegations in plaintiffs' amended complaint, ("Complaint").

1978, CCCS and Hendry delivered it to Dr. Thomas L. D'zmura, Alexander's personal physician. (Complaint, ¶¶ 56–57).

Two separate motions to dismiss have been filed—one by Downingtown and Appleby, the other by CCCS and Hendry, jointly.

## II. LEGAL ISSUES

Count I, which contains the central issues of the complaint, alleges a series of federal constitutional violations for which relief is sought under 42 U.S.C. § 1983. Each claim is challenged by defendants. Plaintiffs' alleged violations are: a first amendment right to free exercise of religion; a right to "maintain a private family relationship without unnecessary, unreasonable, and capricious governmental interference and control;" a fourteenth amendment right to due process of law; and a fourteenth amendment right to equal protection of the law. No specific constitutional source for the second claim is provided by the plaintiffs, but it shall be treated as a constitutional claim nonetheless. It is a subsection of the same paragraph of the complaint which contains clear constitutional claims and is consistent with rights courts have found to be protected on substantive due process grounds under the fourteenth amendment.

Counts II–V allege separate causes of action against each defendant for "gross negligence" and "wanton recklessness," failure to use due care, and failure to conduct a reasonable investigation. These shall be characterized as state claims for negligence and intentional infliction of emotional distress.

Count VI is a state law libel claim based on the defendants' release of Appleby's report to persons at CCCS and to Alexander's doctor.

Count VII alleges that "Defendants invaded the seclusion and solitude of the Plaintiffs' private lives and interfered with their private family relationships." It is best read as a state claim for invasion of privacy.

In addition to their attacks on the substantive constitutional claims in Count I, defendants contend that the constitutional claims must be dismissed because they are not supported with sufficiently specific facts. CCCS and Hendry also assert immunity from suit on the federal claims premised on section 1983 based upon the doctrine set forth in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Further, defendants maintain that since none of the plaintiffs' federal claims are actionable, the court lacks the power to consider any state claims under the doctrine of pendent jurisdiction. In the alternative, they argue that the court should exercise its discretion *not to hear them.* Finally, defendants contend that both the Child Protective Services Law of 1975, 11 P.S. § 2201, *et seq.,* and the Juvenile Act of 1972, 42 Pa.C.S.A. § 6301, *et seq.,* confer immunity for the acts alleged.

■ By orders of September 7 and 9, 1982, and in accordance with the bench ruling made during oral argument on April 13, 1981, the actions against CCCS and the School District were dismissed without prejudice for failure to sufficiently allege the existence of a custom or policy. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* requires a plaintiff to prove the existence of a policy or custom which is of long standing so as to have the force of law causing an unconstitutional deprivation of a claimant's civil rights. *Weisiger v. City of Philadelphia,* No. 80–2719 (E.D.Pa., Sept. 22, 1982), *citing Monell* at 691–94, 98 S.Ct. at 2036–38.[3] Plaintiffs were given an opportunity to amend their complaint as to CCCS and the School District to allege facts which would show such a policy or custom. However, by letter of September 16, 1982, counsel for plaintiffs advised that plaintiffs did not wish to amend. Accordingly, plaintiffs' federal actions against CCCS and the

---

**3.** Plaintiff's equal protection claim was dismissed with prejudice by the court's order of September 9, 1982, there being no allegation of

facts substantiating the existence of a classification or that plaintiffs were treated differently from others similarly situated.

Downingtown Area School District shall now be dismissed with prejudice for failure to state a claim.

## III. SECTION 1983 CLAIMS

### A. *Specificity*

 Defendants argue that the claims against them should be dismissed for failure to plead with required specificity. This contention is not persuasive. While the general rule in this circuit is that civil rights complaints must be plead with specificity, *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir.1978); *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922–23 (3d Cir.1976); *Negrich v. Hohn,* 379 F.2d 213, 215 (3d Cir.1967); *Boddorf v. Publicker Industries, Inc.,* 488 F.Supp. 1107, 1111 (E.D.Pa.1980), that requirement is satisfied when the plaintiff has alleged: the conduct violating his rights; the time of the violation; the place of the violation; and the person responsible for the violation. *See Hall,* 570 F.2d at 89. Plaintiffs have described in detail the occurrence of the in-school counseling sessions, the subject matter of these sessions, and the resulting dependent child petition process. They have alleged specific dates in the fall of 1977 and early 1978 when these events took place. They have specified pertinent events and have charged that Appleby and Hendry are responsible for the violations of their rights.

In *Rotolo,* the plaintiff merely claimed a violation of first amendment rights without specifying the allegedly protected activity. In *Boddorf,* the plaintiff did not identify defendants by name although it was possible to do so. In *Marnin v. Pinto,* 463 F.2d 583, 584 (3d Cir.1972), the plaintiff alleged

only that prison conditions were "worser ... than in ghetto areas" and that the food was "not fit for human consumption." The instant complaint stands in stark contrast by its specificity which I find sufficient to meet the pleading requirements expressed in *Hall. See also Brook v. Thornburgh,* 497 F.Supp. 560, 562 (E.D.Pa.1980).

### B. *Immunity*

Defendants' defense of qualified or "good faith" immunity is much more persuasive. The immunity concept is based upon the need to ensure principled and conscientious governmental decision-making. *Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir.1982). In *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court modified the test to be used in determining whether officials are immune from suit for their actions under the doctrine of qualified immunity.[4] Traditionally, defendants who asserted a defense of qualified immunity had their conduct tested against both an "objective" and a "subjective" standard. *Harlow,* 102 S.Ct. at 2737. *Druckenmiller v. United States,* 548 F.Supp. 193, 194 (E.D.Pa.1982).[5] *Harlow* dispensed with the subjective element of the defense and held that good faith immunity will defeat claims so long as official conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." By relying upon the objective reasonableness of an official's conduct, as measured by reference to clearly established law, a court is now permitted to resolve insubstantial claims through summary judgment. *See Harlow,* 102 S.Ct. at 2738–39.

---

**4.** Though defendants submitted their motions prior to the Supreme Court's decision in *Harlow,* I shall follow its analysis. *See Druckenmiller v. U.S.A.,* 553 F.Supp. 917 (E.D.Pa.1982); *Wolfel v. Sanborn,* 691 F.2d 270, 272 (6th Cir. 1982); *Thompson v. Penna. Parole Bd. Member Jefferson,* 544 F.Supp. 173, 175 n. 3 (E.D.Pa. 1982); *Scott v. Plante,* 691 F.2d 634 (3d Cir. 1982); *Chocallo v. Bureau of Hearings and Appeals,* 548 F.Supp. 1349 (E.D.Pa.1982); *but see Strathie v. Department of Transp. Com. of Pa.,* 547 F.Supp. 1367 (E.D.Pa.1982) (*Harlow* not applied retroactively).

**5.** Qualified immunity was defeated if the official knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of [plaintiffs] ... or if he took the action with malicious intention to cause a constitutional deprivation. *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975).

The threshold question becomes whether the conduct complained of by plaintiffs violates "clearly established" law. *See, e.g., Druckenmiller v. United States,* 548 F.Supp. at 194 (E.D.Pa.1982).[6] More specifically, did defendant Appleby violate "clearly established" law when she conducted approximately eight interviews of Alexander Roman and thereafter referred the matter to CCCS? Did Hendry violate "clearly established law" when she relied upon information supplied to her by Appleby and thereafter provided an affidavit for use in a petition to have Alexander Roman adjudicated a "dependent" pursuant to the Juvenile Act of 1972, 11 P.S. § 50–314, re-enacted as 42 P.S. § 6334? A resolution of these questions, requiring an inquiry into constitutional as well as statutory issues, leads to the conclusion that defendants' actions did not violate "clearly established" law. Therefore, the motions for summary judgment will be granted.

It is axiomatic that competing constitutional claims are found in a school setting. Students, teachers, parents, administrators, and the state as *parens patriae,* all have legitimate rights to further their respective goals. Sometimes these rights clash. Thus, while there is a constitutional right to freedom of religion, it is not absolute and may be circumscribed by a compelling state interest. Courts have stated repeatedly that where a child's emotional well-being may be threatened, or where there is a potential for significant social burdens, the state's interest in his mental health will override free exercise claims. *See Wisconsin v. Yoder,* 406 U.S. 205, 230,

233–34, 92 S.Ct. 1526, 1540, 1542, 32 L.Ed.2d 15 (1972); *Prince v. Massachusetts,* 321 U.S. 158, 169–70, 64 S.Ct. 438, 443, 88 L.Ed. 645 (1943). *Wynn v. Carey,* 582 F.2d 1375, 1384–86 (7th Cir.1978). *Cf. Cornwall v. State Board of Education,* 314 F.Supp. 340, 342–45 (D.Md.1969), *aff'd,* 428 F.2d 471 (4th Cir.1970), *cert. denied,* 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970) (upholding sex education programs over parental religious objections on grounds of the state's compelling interest in public health); *Bykofsky v. Borough of Middletown,* 401 F.Supp. 1242, 1262–64 (M.D.Pa.1975), *aff'd,* 535 F.2d 1245 (3d Cir.1976) (upholding constitutionality of juvenile curfew ordinance).[7] Furthermore, parental requests that their children be exempted from a part of the general public school programs have been frequently denied. *See, e.g., Davis v. Page,* 385 F.Supp. 395, 400 (D.N.H.1974); *Cornwall v. State Board of Education.* As stated in *Williams v. Board of Education of Cty. of Kanawha,* ". . . [The First] Amendment does not guarantee that nothing about religion will be taught in the schools nor that nothing offensive to any religion will be taught in the schools." 388 F.Supp. 93, 96 (S.D.W.Va. 1975), *aff'd,* 530 F.2d 972 (4th Cir.1975) (parents' complaint seeking to enjoin use of textbooks allegedly offensive to Christian morals dismissed under Rule 12(b)(6)). Moreover, where parents choose to enroll their children in public schools, they cannot demand that the school program be tailored to meet their individual preferences, even those based on religion or a right of privacy. Rather, an appropriate balance and, if possible, a reasonable accommodation, must

---

**6.** Both Appleby and Hendry are employees of public institutions and both are required by the nature of their work, as guidance counselor and social service worker respectively, to exercise independent judgment in their decision-making. *See, e.g.,* affidavit of Marjorie Appleby, ¶ 3 and ¶¶ 23–30. Furthermore, defendants were acting within the scope of their discretionary duties as affirmatively alleged by plaintiffs in their amended complaint. *See* ¶ 15. Therefore, they are public officials exercising discretionary functions entitling them to the defense of qualified immunity. *See Strathie,* n. 4, *supra,* at 1376. *See also Thompson v. Burke,* 556 F.2d 231, 236 (3d Cir.1977) (immunity is de-

pendent upon the scope of discretion and responsibilities and all circumstances as they reasonably appeared at the time of the action on which liability is sought to be based).

**7.** *Compare Green v. White,* 693 F.2d 45 (8th Cir.1982) (prisoner could not show prison official violated any of his "clearly established *statutory or constitutional rights*" by imposing reasonable restrictions on the exercise of prisoner's religion, reasoning that the exercise of religious freedom in prisons may be circumscribed by reasonable requirements of prison safety and order).

be struck among the traditional rights of parents in the rearing of their own children, the power of the state to control public schools, and individual rights of free expression. *Scheck v. Baileyville School Committee,* 530 F.Supp. 679, 688 (D.Me.1982).

■ Downingtown Area School District provides services of guidance counselors for all high school pupils. Appleby was hired as guidance counselor in the Downingtown Senior High School in 1968. In or about 1977 her duties included personal, academic, vocational and career counseling. It is undisputed that Alexander Roman, then a tenth grade student, initiated the first counseling session. In the seven counseling sessions which followed, numerous topics were discussed including religion, sex, family relationships and relationships to peers. Given the competing constitutional claims which are inherently involved in a public school setting, including a guidance counselor's first amendment right of free speech, it cannot be said that Appleby's conduct violated plaintiffs' clearly established constitutional right to freely exercise their religion or with their right to maintain a private family relationship without unnecessary governmental interference. The mere fact that Appleby and Alexander discussed potentially sensitive topics does not rise to a constitutional level. There is no allegation that Alexander was compelled to attend the counseling sessions nor threatened with discipline or removal from the school if he failed to cooperate.

Plaintiffs' reliance on *Reed v. VanHoven,* 237 F.Supp. 48 (W.D.Mich.1965), is inapposite as it involved the reading of prayers and biblical passages during school hours. In *Reed,* the court admonished that "no themes will be assigned on such topics as '[w]hy I believe or disbelieve in religious devotions.'" 237 F.Supp. at 56. This does not mean a guidance counselor must avoid all discussion of religious and other sensitive topics, especially when initiated by students.[8]

■ In addition to finding by reference to constitutional standards that Appleby's conduct did not violate clearly established law, thereby entitling her to the defense of qualified immunity, I also find that defense of immunity is supported by the provisions of the Child Protective Services Law (CPSL) of 1975, 11 P.S. § 2201, *et seq.*[9] By this Act,[10] under threat of criminal sanction, a school counselor is *required* to report to the county welfare agency whenever it is suspected that a child "exhibits evidence of serious physical or mental injury." 11 P.S. § 2204 provides in pertinent part:

Persons Required to Report Suspected Child Abuse.

(a) Any persons who, in the course of their employment, occupation, or practice of their profession come into contact with children shall report ... when they have reason to believe, on the basis of their medical, professional or other training

8. Appleby's affidavit states that she uses a "nondirective methodology." ¶ 20.

This means that the student initiates discussion and selects the topics which he or she wishes to discuss. In response, I give information, reflect the student's own ideas, enumerate options and try to provide the student with factual information which might be of some assistance. I refrain from directing the discussion into areas that the student has not raised, from expressing personal opinions, from imposing judgment, and from telling the student what he or she should or should not believe.

*Id.* Exhibit B attached to plaintiffs' original complaint supports Appleby's contention that she utilized this method, one which does not suggest an attempt to indoctrinate as plaintiffs assert.

9. *Cf. Garner v. Memphis Police Dept.,* 600 F.2d 52 (6th Cir.1979) (policeman entitled to assert qualified immunity as complete defense based on his reliance on Tennessee law allowing officer to kill a fleeing felon); *see also Harris v. Pirch,* 677 F.2d 681 (8th Cir.1982) (deputy sheriff acted reasonably and in good faith when he committed plaintiff to a mental health center, relying on provisions of Missouri's civil commitment statute); *Landrum v. Moats,* 576 F.2d 1320, 1327–29 (8th Cir.1978), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978) (semble).

10. The CPSL, Act of November 26, 1975, P.L. 438, was amended on June 10, 1982. The provisions relied upon in this opinion have not been affected by these amendments.

and experience, that a child coming before them in their professional or official capacity is an abused child.

(b) Whenever any person is required to report under subsection (c) in his capacity as a member of the staff of a medical or other public or private institution, school, facility, or agency, he shall immediately notify the person in charge .... Upon notification, such person in charge or his designated agent, if any, shall assume the responsibility and have the legal obligation to report ... in accordance with section 6....[11]

(c) Persons required to report suspected child abuse under subsection (a) include, but are not limited to, any licensed physician, ... school administrator, school teacher, school nurse, social services worker, ... or any other child care or foster care worker, or mental health professional....

Penalties are imposed for failure to report pursuant to § 2212 which provides:

Any person or official required by this act to report a case of suspected child abuse who wilfully fails to do so shall be guilty of a summary offense, except that for a second or subsequent offense shall be guilty of a misdemeanor of the third degree.

Section 2211 of the Act provides immunity from suit of those persons acting in good faith in the making of a report. The good faith of any person required to report, such as Appleby, is *presumed.* Section 2211 provides:

Any person, hospital, institution, school, facility or agency participating in good faith in the making of a report or testifying in any proceeding arising out of an instance of suspected child abuse, ...

shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions. For the purpose of any proceeding, civil or criminal, the good faith of any person required to report cases of child abuse pursuant to section 4 shall be presumed.

*See generally,* Besharov, *The Legal Aspects of Reporting Known and Suspected Child Abuse and Neglect,* 23 Vill.L.Rev. 458, 475–83 (1978) (hereinafter "Child Abuse and Neglect"); McCoid, *The Battered Child and Other Assaults Upon the Family: Part One,* 50 Minn.L.Rev. 1, 36–41 (1965).

■ Plaintiffs allege in Count I of the amended complaint and in their answer to Appleby's motion that her conduct was not in good faith but was "performed knowingly ... maliciously and ... with reckless indifference to and disregard of plaintiffs' [constitutional] rights ...." Such allegations, however, are clearly insufficient to overcome the defense of good-faith presumed in 11 P.S. § 2211. Before Appleby made her referral and recommendation, she conducted approximately eight interviews with Alexander. Appleby involved the parent plaintiffs in one counseling session where she disclosed her findings and conclusions that Alexander needed professional mental health analysis and asked them to obtain that help on their own. On numerous occasions Appleby sought the advice of the school psychologist, McMullen, who attended two counseling sessions and who in his affidavit corroborates what Appleby wrote in her report. It is also undisputed that Mrs. Roman initiated a phone conversation with Mrs. Appleby during which, at the very least, family problems were discussed. Prior to contacting CCCS, Appleby spoke with Alexander's parents and asked

11. Plaintiffs state in their affidavit that "[n]owhere in [McMullen's] affidavit does he say that he gave his consent for [Appleby] to report us to CCCS." This is clearly contradicted by paragraph seven of McMullen's affidavit stating, "Mrs. Appleby again contacted me to discuss this case. We concluded .... (c) We had taken Alexander's case as far as we could within the school context. (d) The behavioral symptoms exhibited by Alexander clearly warranted further examination and diagnosis. (e)

The proper agency to investigate this matter was Children's Services of Chester County." Even if it were found that Appleby had failed to notify the appropriate agency as required by § 2204(b), *supra,* it would not significantly diminish plaintiff's defense of good-faith immunity. *Cf. Harris v. Pirch,* 677 F.2d 681, 687–88 (8th Cir.1982) (failure to fill out statutorily required application form prior to involuntary commitment of plaintiff for observation not evidence of bad faith.)

them why they had not contacted Crisis Intervention on their own, an issue which had been discussed at the counseling session when the parents, McMullen and Appleby were present. *See* Affidavit of Romans, ¶¶ 28–30. None of these factors indicates arbitrary action, gross negligence or reckless disregard of plaintiffs' rights. The fact that Appleby failed, refused or declined to divulge confidential information to the parents at the counseling session which might have been relayed to her by Alexander in confidence, is consistent with careful action and inconsistent with the claim of reckless disregard for the student's rights and interests.

■ Moreover, the Child Protective Services Law does not require that the individual making a report "have probable cause" to believe a child is "deprived." A lesser quantum of evidence is sufficient— *i.e.,* a person must have "reason to believe ... that a child coming before them ... is an abused child." 11 P.S. § 2204(a). The effect of this statutory phrase is that the reporter's diagnosis need not be absolute. *See Child Abuse and Neglect,* 23 Vill.L.Rev. 445, at 471 (1978). *See also Harris v. Pirch,* 677 F.2d 681 (8th Cir.1982) (statute required peace officer to have "reasonable cause to believe [plaintiff] presented a likelihood of serious physical harm to [herself]").

■ Finally, the good faith of Appleby must be judged against objective standards rather than alleged motives or allegations of maliciousness. The law at the time was not such that Appleby could have clearly known that her actions, even as alleged, were improper, especially in light of the mandatory reporting provisions of the Child Protective Services Law. *Compare Smith v. Heath,* 691 F.2d 220, 225–26 (6th Cir. 1982) (record supported finding that officers performing search and seizure knew their actions were improper, that they were not performing normal police procedure, that they had ulterior motives in undertaking a warrantless search and that no probable cause existed for their conduct). Therefore, I conclude that the presumption of good faith is not overcome and she is entitled to summary judgment.

As to Hendry, the CCCS social worker, it is alleged that as a direct result of defendant Appleby's aforementioned referral and recommendation, she filed the petition to have Alexander adjudicated a dependent child pursuant to the Juvenile Act of 1972, 11 P.S. § 50–101 *et seq.,* substantially reenacted in 1978, 42 Pa.C.S.A. § 6301, *et seq.* Plaintiffs further allege that the filing of the petition was without probable cause, reasonable evidence, or proper investigation of the relevant facts. Defendants, on the other hand, allege that they followed the procedures set forth in the Juvenile Act and acted in good faith.

Contrary to the complaint's allegations, it is noted that Hendry did not file the petition but merely provided an affidavit to a lawyer who filed the petition on behalf of CCCS. The petition was verified upon the information and belief of Hendry as required by 11 P.S. § 50–314, reenacted as 42 Pa.C.S.A. § 6334. *See* Exhibit A attached to the original complaint and motion of Hendry and CCCS to dismiss at 9. To the extent that plaintiffs premise their action against Hendry on the actual filing of the petition, it must be dismissed since there can be no dispute that someone other than she filed the petition.

■ Even if it could be argued that Hendry was the de facto petitioner, the same conclusion is compelled that in filing the petition Hendry reasonably relied on the provisions of the Juvenile Act which is the statutory vehicle by which a court of competent jurisdiction can decide what relief, if any, is appropriate. The fundamental purpose of this Act, the constitutionality of which is not questioned by plaintiffs, is to provide for treatment of children, whether delinquent or deprived. *See Janet D. v. Carros,* 240 Pa.Super.Ct. 291, 362 A.2d 1060 (1976). In relevant part, as set forth in 11 P.S. § 50–101, reenacted as 42 Pa.C.S.A. § 6301(b), its purposes are:

(1) To preserve the unity of the family whenever possible and to provide for the care, protection, and wholesome mental

and physical development of children coming within the provisions of this chapter.

 \* \* \* \* \* \*

(3) To achieve the foregoing purposes in a family environment whenever possible . . . .

(4) To provide means through which the provisions of this chapter are executed and enforced and *in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.* (emphasis added).

The petition filed by CCCS requested the court to order psychological and psychiatric evaluation for the child. In keeping with the purposes of the Act, no attempt was made to remove Alexander from the care of his parents. CCCS, and arguably Hendry, also petitioned to have Alexander adjudicated a "dependent child." That term is defined in 42 Pa.C.S.A. § 6302 of the Juvenile Act, formerly 11 P.S. § 50–102(4), as "a child who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals; . . . ." By this language, the legislature has defined "deprived child" in exceedingly broad terms, not only because it is impossible to foresee all the factual situations that may arise, but also because this definition enables the experienced juvenile court judge to apply his training and compassion to the unique facts of each case. *Matter of DeSavage,* 241 Pa.Super.Ct. 174, 183, 360 A.2d 237, 242 (1976). Given this definition, as well as the express purpose of the Juvenile Act and the referral from Appleby which must be considered part of Hendry's investigation, it was neither capricious nor arbitrary for her to petition the court to have Alexander Roman adjudicated a "dependent child."

■ Moreover, it would be entirely anomalous to find that Hendry had violated plaintiffs' constitutional rights when it is a declared purpose of the Act "[t]o provide

means through which . . . the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced." *See* § 6301(b)(4), *supra.* When a petition is filed the mere fact that it is denied is not evidence that there was a lack of good faith.[12] The Commonwealth sustains a very strict burden of proof—the court must find from *clear and convincing* evidence that the child is deprived. *Matter of DeSavage,* 241 Pa.Super.Ct. at 184, 360 A.2d at 242 (emphasis in original). That CCCS and Hendry may have failed to meet this burden does not mean, however, that the petition was improperly brought. Indeed, if this were the case, then any person whose petition was denied would be subject to a suit for damages. Surely, this is not the intent of the Juvenile Act which encourages the filing of such petitions and provides a method by which constitutional rights can be protected.

### C. Due Process

■ Plaintiffs argue that their constitutional right to due process has also been infringed. Defendants Appleby and Hendry do not dispute the plaintiffs' right to due process but rather that plaintiffs received their "day in court" by the very method which the Commonwealth intended. I agree. A verified petition was filed on behalf of CCCS following the procedure outlined in the Juvenile Act, 42 Pa.C.S.A. §§ 6321(a)(3) and 6334, previously 11 P.S. §§ 50–302(3) and 50–314 respectively, and a hearing was held before the Honorable Robert Gawthorpe of the Chester County Court of Common Pleas, Pennsylvania, at which plaintiffs were represented by legal counsel and presented expert testimony. The hearing held on February 17 and 24, 1978, substantiates the finding that the Romans were afforded the due process anticipated by the Commonwealth and by the Constitution of the United States. No evidence has been offered to contradict this; plaintiffs merely allege that there was no probable

**12.** *Cf. Harris v. Pirch,* 677 F.2d 681 (8th Cir. 1982) (good-faith defense valid even though examining physician found no evidence of drug abuse or psychiatric symptoms after deputy-sheriff committed plaintiff pursuant to provisions of Missouri statute).

cause to file the petition. However, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner . . . ." *Smith v. Webb,* 420 F.Supp. 600, 605 (E.D. Pa.1976) *quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The Romans may have suffered some embarrassment by the filing of the petition and subsequent hearing, but in no way were they denied a meaningful opportunity to be heard.[13] Furthermore, "[t]he interpretation and application of the Due Process Clause are intensely practical matters." *Goss v. Lopez,* 419 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975); *Smith v. Webb,* 420 F.Supp. at 605. It would be impractical to require more stringent procedures than utilized in the instant case and required by statute. Otherwise, the very purposes for which CCCS is established and for which the Juvenile Act was written would become bogged down by procedural technicalities and costly litigation.

For the above reasons, I find that Hendry is also entitled to summary judgment on Count I of the complaint.

### D. *Pendent State Claims*

 Having dismissed plaintiffs' federal causes of action, remaining to be decided is whether this court should exercise pendent jurisdiction over the state claims filed against Appleby and Hendry in Counts II–VII of the amended complaint. It is hornbook law that federal courts have the constitutional *power* to exercise pendent jurisdiction where the state and federal claims derive from a common nucleus of operative facts such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (em-

phasis in *Gibbs* ); *Lentino v. Fringe Emp. Plans, Inc.,* 611 F.2d 474, 478 (3d Cir.1979). Under the first part of the *Gibbs* test, this court has the power to exercise pendent jurisdiction over all of the state claims; the same nucleus of facts underlies the asserted federal and state claims and they are such that a plaintiff would ordinarily be expected to try them all in a single trial. *See Weisiger v. City of Philadelphia* No. 80–2719, slip op. at 8 (E.D.Pa. Sept. 22, 1982).

The next determination is whether, as a matter of discretion, the court should exercise its power. *Gibbs* cautions that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139. *See* 3A Moore's Federal Practice ¶ 18.07[1.–3] at 18–59 (2d ed. 1982). *Gibbs* also cautions that "if it appears that the state issues substantially predominate . . . , the state claims may be dismissed without prejudice and left for resolution to the state tribunals." *Id.* at 726–27, 86 S.Ct. at 1139.

 Since I have dismissed all of plaintiffs' federal claims prior to trial, the remaining state claims stand alone. Accordingly, under *Gibbs,* I shall exercise my discretion to dismiss the pendent state claims for lack of a subsisting federal claim.[14] *Rogin v. Bensalem Tp.,* 616 F.2d 680, 697 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *Broderick v. Assoc. Hospital Service of Philadelphia,* 536 F.2d 1, 8 n. 25 (3d Cir.1976); *Braden v. University of Pittsburgh,* 477 F.2d 1, 4, n. 5 (3d Cir.1973).

An appropriate order follows.

### FINAL ORDER

AND NOW, this 22nd day of February, 1983, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

---

13. It cannot be argued that due process was denied plaintiffs during the counseling sessions at school. No adverse regulations were enforced upon Alexander Roman at that time which created a legitimate claim of entitlement, protected by the Due Process Clause. *Cf. Smith v. Webb,* 420 F.Supp. 600 (E.D.Pa.1976).

14. No diversity of citizenship exists between the parties, nor is there an independent basis for federal jurisdiction.

1. Defendant Appleby's motion to strike plaintiffs' affidavit is DENIED.

2. Plaintiffs' complaint against Downingtown Area School District and Chester County Children's Services is DISMISSED with prejudice.

3. Plaintiffs' causes of action against Appleby and Hendry contained in Count I of the amended complaint are DISMISSED with prejudice.

4. Plaintiffs' pendent state claims against Appleby and Hendry contained in Counts II–VII are DISMISSED without prejudice.

5. The remaining allegations having previously been dismissed, this is the final order in this action.